### C. S. KINSLAND v. C. GRIMSHAWE.

(Filed 14 December, 1907).

**Principal and Agent — Termination of Agency — Double Agency — Option—Extension—Commissions.**

Plaintiff was agent for defendant for the sale of timber lands upon an agreed commission, at a certain price. In pursuance thereof he introduced to defendant one B., representing G., who was engaged in the business of buying and selling land. Plaintiff gave to B., for G. and his assigns, a thirty-day cash option at the price stipulated, which was extended from time to time. G. sold his interest to one W., who bought under the option thus extended: *Held*, (1) it was not error for the Judge below to instruct the jury that, if they believed the evidence, the defendant was liable to the plaintiff for his commissions; (2) that the plaintiff, by aiding G. to sell to W. and receiving a commission therefrom, was not acting antagonistically to the interests of the de-

fendant, and that, while the negotiations under the option were going on, the defendant could not terminate the agency of the plaintiff.

CIVIL ACTION, tried before *Guion, J.*, and a jury, at August Term, 1907, of the Superior Court of TRANSYLVANIA County.

The defendant, during the month of April, 1903, entered into an agreement with plaintiff, by the terms of which plaintiff was to find a purchaser for a large body of land belonging to defendant, at the price of $3.50 per acre. For his services, if a sale was made to a purchaser who should be found by plaintiff, he was to receive a commission of 10 per cent. on the cash payment and 5 per cent. on deferred payments. Plaintiff introduced to defendant one Bourne, representing H. E. & S. T. Graves, who were engaged in the business of buying and selling land. After some negotiation, defendant, on 27 May, 1903, gave to Bourne, for Graves, a cash option for thirty days. Later on, the defendant extended the option to 20 August, 1903. On 21 August, 1903, defendant again extended the option two months. On 16 December, 1903, defendant executed a contract with Graves, reciting the former option and extensions, again extending the time to complete the trade to 20 February, 1904. At this time Graves accepted the option and contracted to comply with its terms. He agreed to deposit in the Battery Park Bank at Asheville $5,000 as a guaranty that he would comply with the contract. It was agreed that a survey of the land was to be made and the title investigated, all of which was to be completed by 20 February, 1904. It was further stipulated that, if any providential hindrance should prevent the completion of the trade, further time was to be given. On 19 February, 1904, another contract was entered into, referring to the option of 27 May, 1903, reciting the contract of 16 December, 1903,. and further reciting that "providential hindrances had intervened." The time was again extended to 20 April, 1904, when the transaction should be closed. Graves transferred

his interest to one Wood, who paid defendant $12,000 cash and gave him a short-time note for $8,000, which he afterwards paid, and defendant executed a deed for the land to Wood. While these negotiations and extensions were being made, plaintiff entered into a contract with Graves, the terms of which are set forth in a paper-writing: "This is to certify that, for and in consideration of your having rendered us certain services in the sale of the Grimshawe lands, we, H. E. & S. T. Graves, agree and bind ourselves to pay you, C. S. Kinsland, 10 per cent. of all net profits and commissions received from said sale, and the same to be paid you as we receive our payments." Dated 14 January, 1904. By an arrangement made with one Aiken, with the consent of defendant, plaintiff agreed to divide the commission with Aiken. This agreement was made at the time the original contract was entered into. It is not material to the decision of this appeal and is only noticed to explain the amount of plaintiff's recovery. The defendant resists payment of the commissions upon four grounds:

1st. That plaintiff abandoned defendant's employment.

2d. That he failed to find a purchaser within the limitations of his contract.

3d. That, on 16 December, 1903, plaintiff revoked his contract with defendant.

4th. That by entering into the contract with Graves he assumed antagonistic relations towards the defendant and undertook to serve two masters.

To meet these contentions the following issues were submitted to the jury, his Honor instructing them, if they believed all of the evidence, to answer as set out in the record:

"1. Did the defendant contract with the plaintiff to sell the defendant's land for the commission, as alleged?" Answer: "Yes."

"2. Was the option or contract, originally entered into by the defendant with H. E. & S. T. Graves for a valuable con-

sideration, continued in force by the defendant and a sale of the said lands made pursuant thereto?" Answer: "Yes."

"3. In what amount, if any, is the defendant indebted to the plaintiff?" Answer: "Eight hundred dollars, with interest from 1 June, 1904."

"4. Did the plaintiff, by treachery and double dealing, prevent the defendant from making a more advantageous sale of his said lands than that actually made?" Answer: "No."

"5. Was the extension of the option by the defendant an extension of the agency?" Answer: "Yes."

Defendant excepted. There was a judgment upon the verdict, and defendant appealed.

*George A. Shuford* and *Womack, Hayes & Pace* for plaintiff.
*Gash & Galloway* for defendant.

CONNOR, J., after stating the case: His Honor could not have directed judgment of nonsuit. The testimony presented questions for the jury. There was ample evidence to show the contract as found by the jury. This is not seriously controverted by defendant, his defense resting upon other grounds. In regard to the second issue, the defendant says that he extended the option of 27 May, 1903, to 20 August, 1903. He says that, on 21 August, 1903, plaintiff and Bourne asked for an extension of two months, "which I made it." It is true that, at the expiration of that time, 20 October, 1903, Graves failed to take the land, and, unless renewed by defendant, the option was at an end and defendant was under no further liability to Graves and plaintiff; but, on 16 December, he entered into a written contract of sale with Graves, expressly referring to the option of 27 May, 1903, and its extension, which Graves accepted. This contract was made as an acceptance of the option, and Graves deposited in the bank $5,000 as a guaranty of his performance of the same. He was given until 20 February, 1904, not to accept the

option, but to have survey made and title investigated. Graves thus became a purchaser at the price and in accordance with the terms of the option of 27 May. The contract provided for further time, if, for "providential reason," it should not be consummated. On 19 February, 1904, another contract was entered into, referring to the option of 27 May, 1903, and the time was again extended, on account of "providential reasons," to April 20, 1904. This contract, after reciting several stipulations, concludes: "The same shall be conveyed to H. E. & S. T. Graves, or their assigns, at the price and in accordance with the terms of 27 May, 1903." The written evidence clearly sustains his Honor's instruction in respect to the second issue. The transaction was finally closed upon the terms of the option of 27 May, 1903, which was the result of the contract made between plaintiff and defendant in April, 1904. The defendant, however, insists that plaintiff lost his right to commissions because the agency was terminated in December, 1903. Defendant says that plaintiff asked him if he was going to pay him the commissions, and that he said he was not, because defendant had become Graves' agent.

It is not contended that plaintiff released defendant by any express terms, or assented to the termination of the agency otherwise than by the contract which he made with Graves.

Did this contract place plaintiff in a position antagonistic to defendant? It seems that Graves was buying for the purpose of selling at a profit. The terms of the contract between Graves and defendant were fixed at the beginning of the negotiation. There was never any question as to the price which Graves was to pay or which defendant was to take. The only effect of the agreement between Graves and the plaintiff was to stimulate Graves to take the land by aiding him in selling at a profit. This was in no sense antagonistic to defendant's interest. If plaintiff succeeded in sell-

146—26

ing the option for Graves, it secured to defendant its acceptance and a sale of the land.  We are unable to see how there was any treachery or double dealing which was calculated to prevent defendant from making a more advantageous sale. He had contracted to sell to Graves at his price, and, it seems, was at all times willing to do so.  This is shown by the several extensions of the option.  Instead of plaintiff's contract with Graves preventing a sale, it was conducive to it.  He was, in a certain sense, "serving two masters," but both were working to a common end—defendant wished to sell to Graves at a price agreed upon; Graves wanted to buy if he could sell at a profit.  Plaintiff's interest was to bring about both results—and it seems that this was done.

Defendant insists that his contract was to pay plaintiff a commission if he made a sale within thirty days.  It is true that defendant had the right to put an end to the option and the relation of agent at the expiration of the thirty days from 27 May, 1903, if he had chosen to do so.  It may be that if, on 11 June, 1903, when plaintiff and Bourne went to see him to get the extension, defendant had not consented to it, Graves would have raised the money and taken the land by 27 June, 1903—the day upon which the option expired—in which case plaintiff would have been entitled to his commission.  By extending the option and retaining the opportunity to sell upon the terms of the original option, and finally selling and receiving the money, we think that the defendant acted in such a way as to justify the finding of the jury that the agency was continued.

It is undoubtedly true, as contended by defendant, that a person cannot act ·as agent for both buyer and seller, when their interests are antagonistic, or when · the terms of the purchase are unsettled.  The authorities cited in the excellent brief of defendant's counsel fully sustain this position. The answer to the contention is, that plaintiff, having brought Graves and defendant together and made a sale for an agreed

price, had a perfect right to accept a commission from Graves, to aid him, not in buying, but in selling the same property. That defendant recognized plaintiff was entitled to compensation for his services is shown by his testimony that, when he completed the sale and got the money, he left $500 with Graves "as a present to Kinsland." This amount plaintiff never took.

Upon a careful examination of the whole evidence, we think that there is no substantial controversy about the facts. His Honor correctly charged the jury that, if they found the facts to be as testified by all the witnesses, they would answer the issues as set out in the record. This was not directing a verdict, but instructing the jury in regard to the law, leaving to them the decision of the facts upon all of the testimony. As plaintiff had agreed, with the consent of defendant, to give one-half his commissions to Aiken, he was entitled to only $800, the amount awarded him by the jury. There is

No Error.