## W. C. TYRRELL TRUST v. LOVELL.
(No. 9272.)

Court of Civil Appeals of Texas. Galveston.
April 4, 1929.

Dissenting Opinion April 11, 1929. Rehearing
Denied May 2, 1929.

"No. 1. Was it the intention of the parties at the time of the writing of the letter of December 6th, 1923, that Dubois, Stratford, and Lovell were to receive a commission of one per cent. each on all sales by W. C. Tyrrell Trust? It was.

"No. 2. Did plaintiff Lovell by his action prior to the sale of the land to Johnson lead the agents of defendant to believe that he would not claim a commission on said sale? He did not."

On consideration of this verdict, the court, after adding an independent finding of its own to the effect that the two purchasers had only at that time paid in to the trust· a total of $64,512, rendered judgment in Lovell's favor for 1 per cent. on that sum, or $645.12. From that decree this appeal regularly proceeds.

The letter referred to was this:

"Elena, Tex., December 6, 1924.
"Mr. P. M. Du Bois, Mr. F. B. Stratford, Mr. E. T. Lovell, Elena, Texas.

"Gentlemen: After leaving Elena last Sunday evening I gave considerable thought to the working arrangements that has been made by you gentlemen, and I came to the conclusion, in my mind, that the same could not be satisfactorily carried through for· the reason that it left too much room for conflict in several ways. I discussed the matter later with Mr. Tyrrell and the final conclusion reached at·that time was that I should handle the matter in such manner as I thought best.

"As you no doubt realize, there is a tremendous responsibility back of handling that property and in order to handle it to a successful conclusion it is of course very necessary that we have absolutely no discord, and that we all pull together. With this thought in mind it seems to me the only way it can be handled successfully is that the W. C. Tyrrell Trust agree to pay a commission to you gentlemen on all sales made, whether made by you or in connection with some other agent. This commission to be divided equally between all three of you. You further understand that in paying a salary to each of you we have in mind that it will be necessary for each of you to devote a good portion of your time to looking after the property in a general way. It is not contemplated that any of you shall spend all of your ·time at the office, ·but that you shall at all times be in reasonably close touch with the office, and shall use your best efforts to assist any agent in closing any.deal, whenever you may be called upon to do so. As stated above it is my earnest desire that this can be worked out to the entire satisfaction of all concerned, and with that idea in mind I would suggest that you be allowed a commission of three per cent on all sales made. This three

Franklin & Blankenbecker, of Houston, for plaintiff in error.

Boyles, Brown & Scott and Frank G. Dyer, all of Houston, for defendant in error.

GRAVES, J.   Lovell sued the Tyrrell Trust, a joint-stock association, for $2,443.30 alleged to be due him under a contract between them as 1 per cent. on the aggregate amount of the sales by it through other agents than himself of one tract of land, each, to Harry K. Johnson and John Martin; the declared upon contract rested on a letter written by the trust's manager to Lovell and two others of its agents, Dubois and Stratford, on December 6, 1924, and two issues of fact were submitted to and answered by a jury as follows:

per cent to be divided equally among you. Should any of you be called upon or deem it advisable to make a trip to make a sale, all expenses in connection with such sales should be divided equally, it seems to me.

"Regarding the office work, it is contemplated that at the present time Mrs. Stratford will devote all her time to the office, with the idea of giving information to any customers that might come in, and getting them in touch with whoever may be necessary. I would further suggest that Mrs. Stratford receipt and collect any payments that may come to the office, but that Mr. Lovell make up the report and make the deposits, copy of which will be sent this office. Mr. Stratford will of course do all surveying necessary to be done, at any time, and Mr. Du Bois will have general charge of all affairs in connection with the property.

"You will of course understand that this agreement is subject to termination at any time on thirty days notice.

"Yours truly, W. C. Tyrrell Trust,
"By F. B. Martin, Manager."

In this court, through its first six propositions, the trust contends that Lovell was not entitled to recover and that its requested peremptory instruction should have been given, because, as a matter of law: (1) The trust itself had a right under the contract to sell the land direct to the purchasers without incurring liability for a commission to the plaintiff, which the undisputed evidence showed it had in this instance done; and (2) it was likewise shown that he had had no connection whatever with the sale to Johnson, that having been made after he left the trust's employ, and he having also— at a time and under circumstances when he should have spoken—acquiesced in a construction by it of the quoted letter, under which no commission would inure to him.

We think this position untenable; the argument in support of it, as concerns the meaning of the contract, is that plaintiff was only to get a commission on sales made by himself and those made by other agents of the defendant "actually engaged upon commission in the sale of said lands," but "it is not so nominated in the bond," or letter, constituting the agreement of the parties, which speaks for itself; no such provision or limitation appears therein; on the contrary, its terms seem to us to import that he was to be allowed a commission on all sales made, whether effected through his own efforts or those of any other agent of the defendant, there being at least two distinct recitations to that effect appearing in different parts of the letter:

(1) "It seems to me the only way it can be handled successfully is that the W. C. Tyrrell Trust agree to pay a commission to you gentlemen on all sales made, whether made by you or in connection with some other agent."

(2) "As stated above, * * * and with that idea in mind, I would suggest that you be allowed a commission of three per cent on all sales made."

Had it been the purpose to restrict the benefit thus so broadly granted on "all sales made," when effected by others than the plaintiff himself, to "any other sales-agent who would be entitled to a commission," it would have been quite easy to ingraft that qualification upon quoted provisions. To now attempt to add that discordant element would seem to us to be out of harmony with the underlying sentiment of the whole letter; plainly a family affair was made of the entire enterprise between the trust, its manager, Mr. Martin, and its three other agents, the addressees in this communication; they were each to be paid a salary—apparently recognized by the manager as being inadequate compensation for what they were expected to do—and then to the better secure the co-operation of all concerned he so desired in all the ramifications of handling the trust's large property interests, the 3 per cent. commission on all sales made, without regard to who effected them, was added for the joint benefit of the three named agents, in which they were each to share alike, all obviously being expected in return to commit themselves in joint and several efforts unreservedly to its service.

And this the proof shows they did. In aid of our interpretation, as entitled to do under the rules of law, 13 Corpus Juris, par. 517, p. 546, we take from the undisputed evidence the acts of the parties themselves under their contract in carrying it out as indicative of how they mutually construed it:

Lovell was paid the stipulated commission on all sales made by the trust, not only of the lands located at Elena but at other places also, regardless of who made them; and most of them were made by other agents than himself, up to the sale to Harry K. Johnson. This practice even extended to some land up in the state of Iowa. Mr. Will Tyrrell, one of the sons of the founder of the trust, who was not an agent at all but one of the owners of the properties, reported to its Elena, Tex., office that he had sold the Iowa land belonging to it and desired the commission credited to his son in Beaumont, Tex. That was done, and Lovell and his two associates were paid their regular 3 per cent. commission upon that sale, although neither young Tyrrell nor any of them had anything to do with the sale.

Mr. Martin, the writer of the letter, while general manager of the trust with plenary power over all its property, both at Elena and throughout Jefferson county, save only as to signing deeds and borrowing money, was himself an agent, and as such he made the sale to Johnson. It is true Mr. Martin was not engaged upon commission in the sale of these lands, being instead paid his

full compensation in salary, but that seems wholly immaterial as concerns the plaintiff Lovell's right to his commission, in view of the quoted language of the contract itself and of these acts of the parties under it.

But if, under the language they employed in making it and the acts they did in carrying it out, the intent of the parties was not so made clear, then their use of the expression "whether made by you or in connection with some other agent" was ambiguous, their meaning uncertain. and both sides having pleaded and introduced parol proof to establish their several interpretations of it —the one asserting that it simply meant what was so directly said, the other that it meant "any agent of the defendant actually engaged upon commission in the sale of said lands"—a question was raised for the jury, which the court properly submitted in special issue No. 1. San Antonio Machine & Supply Co. v. Allen (Tex. Civ. App.) 268 S. W. 532; Plummer v. Simms (Tex. Civ. App.) 177 S. W. 1037; Ginnuth et al. v. Blankenship & Blake Co. et al. (Tex. Civ. App.) 28 S. W. 828.; McPherson v. C. W. Hahl & Co. (Tex. Civ. App.) 151 S. W. 323; Levy v. Tatum (Tex. Civ. App.) 43 S. W. 941.

Likewise must fall, we think, the above-stated second ground of support for this contention, since, as we read and understand its purport, the undisputed evidence neither showed that this sale to Harry K. Johnson had been made after Lovell left the trust's employ, nor that he had ever acquiesced in any construction of the letter that would have defeated his claim as concerned that transaction. Quite the contrary appears. A written contract for the sale of some 5,000 acres of its property at Elena, Tex., by the trust.to Johnson was executed between them on June 6, 1925, at a time when Lovell's employment was in full effect, and nearly seven months before it terminated on December 31, 1925, after 30 days' prior notice from Mr. Martin, pursuant to the provision to that effect in the contract-letter of December 6, 1924. While this contract provided that Johnson must execute vendors' lien notes for the purchase money and expend $50,000 toward construction of a railway before he would be entitled to a deed to the land, neither of which requirements he had met at the time plaintiff Lovell left the trust's employ on December 31 of 1925, he had done so by March 29 of 1926, when he received a deed from the trust to the 5,000 acres and gave it in payment his four vendors' lien notes thereon for $60,272.50 each. At the date of this trial he had paid one of these notes, thereby completing his purchase to the extent of that much of the property, which had accordingly been released to him by the trust, and 1 per cent. upon that amount only represented the portion of Lovell's $645.12 recovery herein that was allocated to the Johnson transaction.

It is true this contract further provided that Johnson might at any time after July 1 of 1926 reconvey to the trust any part of the 5,000 acres he then had not himself resold, in cancellation pro tanto of such of his unpaid notes as it still held; but that optional provision cuts no figure here, because, under the facts just recited, this controversy was made to apply only to such of the land as he had paid his vendor's lien notes against, hence had completed his purchase of.

So, it indisputably appears that the contract between Johnson and the trust touching the 5,000 acres was negotiated and entered into while the plaintiff here was in the employ of the defendant under the full effect of the contract between them that was never in any way abrogated until almost seven months later, and that pursuant to and in accord with the terms of such contract with Johnson, the trust thereafter in fact completed the sale and release to him of so much of the 5,000 acres as this suit is concerned with. That much being true, it became immaterial that the effect of the original writing may have been merely an option to purchase, and that Johnson did not finally complete his exercise of it until some three months after Lovell's contract with the defendant had been terminated. Waurika Oil Ass'n, No. 1 et al. v. Ellis (Tex. Civ. App.) 232 S. W. 364; Black v. Wilson (Tex. Civ. App.) 187 S. W. 493; Slade & Bassett v. Crum (Tex. Civ. App.) 193 S. W. 723; Kinsland v. Grimshawe, 146 N. C. 397, 59 S. E. 1000; Coffman v. Dyas Realty Co. (Mo. App.) 159 S. W. 842.

As before indicated, we find no evidence that the plaintiff, either before the trust had so contracted with Johnson, or at any other time, acquiesced in such a construction of the letter between them—or otherwise so acted—as would have made it inequitable for him notwithstanding to. still claim his commission on the Johnson sale. All that appears in that connection, as testified to by Manager Martin, is that, about the latter part of May of 1925, just a short time before the contract was signed with Johnson on the following June 6, this occurred:

"I don't think there was any discussion between Mr. Lovell and me about a commission on the sale to Johnson, if it happened to be made. I just mentioned in the office there would be no commission paid on the Johnson sale. I made that statement in the presence of Mr. Lovell, Mr. Stratford and Mr. Du Bois, and I don't think Mr. Lovell made any remark in response to my statement. * * *

"Mr. Lovell never did tell me that he was not going to claim a commission on the Johnson sale."

Lovell testified that he had never received any commission on the Johnson sale; that no officer of the trust had ever told him he was not entitled to one under the terms of

his contract, nor otherwise explained to him why he did not receive it; that before severing his connection with the concern he had notified Manager Martin by letter that he expected his commission on that sale, but never received any reply.

As already shown, no notice of termination of his contract was ever given plaintiff until 30 days before December 31 of 1925. Had defendant desired to cut off his right to the stipulated commission on the Johnson deal, it could have done so by giving him the specified notice of 30 days before obligating itself in that matter on June 6, 1925; but this it did not do.

In these circumstances, Manager Martin's mere unresponded-to ipse dixit that plaintiff would not be paid a commission on a transaction covered by his then subsisting contract with the defendant, which clearly gave him a right to it, did not estop the latter from thereafter claiming such compensation; no construction of the contract itself having even been undertaken by Martin at the time.

It follows that the jury's answer to special issue No. 2 could not, in our opinion, have lacked support in the evidence; indeed, we think its submission was unnecessary under the undisputed state of the testimony on that feature, but no harm resulted to the plaintiff in error, since the same result to it must have followed anyway.

No prejudicial error resulted from the court's refusal to give the plaintiff in error's requested special issues 1 to 3, inclusive, because Nos. 1 and 3 were without evidence to support them, and No. 2 was not pleaded.

Since, under the construction we have put upon the contract, the undisputed evidence showed that plaintiff was entitled to a 1 per cent. commission on all sales made by the defendant, and since it was plainly shown that the sale to John Martin, county commissioner of block 46, unit C, Elena Farms, for $3,240, was made while plaintiff was in the employ of defendant and while his contract was in full force and effect, plaintiff was entitled to a 1 per cent. commission on that sale, and the court did not err in allowing him the sum of $32.40 as his commission thereon.

These conclusions require an affirmance of the trial court's judgment; that order has been entered, with Chief Justice PLEASANTS dissenting.

Affirmed.

PLEASANTS, C. J. (dissenting). I am unable to agree with my associates in the affirmance of this judgment. It is, in my opinion, an unwarranted construction of the contract set out in the opinion of the majority to hold that the parties thereby intended to give appellee and his associate sales agents the exclusive right during the continuance of the contract to sell the property of the trust, and this is the effect of the construction given the contract by the majority of the court.

The contract seems to me to be free from ambiguity. The express purpose of the letter which contains the contract is to make the contract clear and definite as to the commission appellee and his associates would receive upon sales of the property, in order that there might be no discord and that all would "pull together."

The evidence shows that appellant had a number of sales agents for its property in Houston, Beaumont, and at other places. Appellee and his associates were located on the property in Harris county which was being subdivided and placed on the market, and each of them was paid a salary as compensation for services required of them in the care and general charge of this property, and in keeping a record of the sales thereof. They were also authorized to make sales and were allowed compensation in addition to their salary of 3 per cent., to be divided between them, 1 per cent. to each, on all sales "whether made by them or in connection with some other agent."

The undisputed evidence shows that neither appellee nor any of his partners in the contract, nor any other sales agent of the appellant, had anything whatever to do with the sale upon which the commission was allowed appellee by the judgment. The statement in the letter that appellee and his associates should be allowed 3 per cent. on "all sales," when read in connection with the entire sentence in which it occurs, and the preceding definite statement fixing and limiting the commission at 3 per cent. on all sales made by them "or in connection with some other agent," raises no ambiguity, and the court was not authorized to submit the question of the intent of the parties to the jury. There was no conflict in the evidence upon any material fact issue. Cook v. Dennis, 61 Tex. 246; Reagan v. Bruff, 49 Tex. Civ. App. 226, 108 S. W. 185; El Paso & S. W. Ry. Co. v. Eichel & Weikel (Tex. Civ. App.) 130 S. W. 922.

The statement in the opinion of the majority that appellant had, by allowing appellee and his associates 3 per cent. commission on all sales made by the trust regardless of by whom such sales were made, construed the contract as entitling appellee to the commission on all sales made by the trust, is not borne out by the record. The record does show that appellee and his associates had received commissions upon sales made by other agents of other lands of appellant than the property in Harris county which was in their care and custody, but none of these sales are shown to have been made by the trust itself. The sale mentioned in the opinion of the majority of the Iowa lands was not a sale negotiated by the trust. It is true

Mr. Tyrrell who negotiated the sale was one of the owners of the trust estate, but he made these negotiations as the representative and for the benefit of his son, who was one of the sales agents of the trust, and who was credited with and paid the commission for making the sale. This was clearly not a sale made by the trust independent of any of its sales agents.

The sale upon which the commission was allowed appellee by the judgment was made by F. B. Martin, general manager and alter ego of the trust, in pursuance of a contract made by him for the trust, the consideration for which was the construction of an Interurban Railway from Houston to Goose Creek through the lands of appellant in Harris county.

It seems clear to me that the contract between appellee and appellant cannot be construed as entitling appellee to a commission on this sale. If the construction given the contract by the majority is sound, it would follow that if appellant had itself sold all of its property and gone out of business, appellee, without having aided in any way in making such sale, would have been entitled to 1 per cent. commission on the purchase price received by appellant for its property. The contract is not susceptible of such construction.

Our courts have uniformly held that a landowner is not liable for commissions to a broker or sales agent upon a sale made by the owner himself unless the contract with the broker gives him an exclusive right to make the sale, or the landowner avails himself of the services of the broker in effecting the sale. English v. George Realty Co., 55 Tex. Civ. App. 137, 117 S. W. 996; Ford v. Cole (Tex. Civ. App.) 195 S. W. 661; Bomar v. Munn (Tex. Civ. App.) 158 S. W. 1187.

I think this general rule of law is conclusive against appellee's suit, and the judgment of the court below should be reversed and judgment here rendered for appellant.

### On Motion for Rehearing.

GRAVES, J. In view of the dissent and of plaintiff in error's vigorous motion, which severally in different respects call in question findings of fact originally made, we have, in reconsideration, again carefully examined the record and statement of facts, with the result that no finding formerly stated can now be held to be unsupported, except the recitation that the land sold by Mr. Will Tyrrell was in Iowa—a wholly immaterial detail, which the reminder of the trust's counsel enables us to here correct, it being in Texas, and Mr. Tyrrell himself being in Iowa when making the sale. In this connection, however, there is no evidence, as the dissenting opinion asserts, that "he made these negotiations as the representative and for the benefit of his son," the record merely

showing that he first sold the land for the trust, not being at the time either its agent for the purpose or the representative of any one, and then reported the sale to its Elena office with the request that the commission be credited to his Beaumont son, which was done and appellee and his associates given their regular 3 per cent. allowance on it; in other words, it was simply treated as being in line with what we so found was the habitual practice. Our former findings must therefore be reiterated.

Equally untenable is the present insistence that the land sold to Johnson was shown to have been withdrawn from within the purview of Lovell's contract two months before any agreement for such sale had been made. This rests alone upon Manager Martin's testimony to this effect: "I don't think the agents of the Trust were selling the land which Johnson bought up to the date the contract was signed, June 6, 1925. I think I had practically withdrawn that property from the market when we began negotiating with Johnson. It was probably in February or March, 1925, that I told our agents not to sell any more of that land. Mr. Lovell was in the employ of the Tyrrell Trust at that time."

The argument is that this expression undisputedly evidences a compliance with the concluding provision of the letter that "this agreement is subject to termination at any time on 30 days notice," hence abrogated the contract entirely as affected that portion of the trust estate. Obviously, we think, no such meaning can properly be read into the statement, as the general manager plainly was only referring to his preventing small-parcel sales out of that 5,000 acres by others of their sales agents to third persons while he himself, as their ex officio chief, with their co-operation, was endeavoring to sell the whole of it to Johnson—not to any attempt to withdraw it from the operation of the contract sued on. It could not be given that effect anyway, because, by its express terms, the 30-day notice provision was alone operative toward termination of the agreement as an entirety, not toward a piecemeal disintegration of it. Consequently no termination of any sort took place until December 31, 1925.

And, as formerly stated, Manager Martin was himself admittedly a sales agent, his own testimony on the point being: "I did have authority to sell land for the Tyrrell Trust. If you had come to me and said you wanted to buy some property from the Tyrrell Trust, I had authority to make the contract with you, but I didn't have any authority to make you a deed."

Then why, under all the other circumstances so tending, is it an unthinkable thing that he meant to include himself with all the other agents from whose sales the three

resident ones on the property at Elena should receive this very small overriding commission?

It indisputably appears that the contract with the latter was a special arrangement, partly at least in consideration of the many other duties than selling land they were to perform, not comparable to an agency for the single purpose of selling land exclusively for a fixed commission; as Lovell put it, "in other words, I looked after the welfare of the property as a whole."

Our original finding that Lovell was paid the claimed commission on all sales made by the trust is vindicated by the fact that this entire record fails to disclose a single sale the concern made—by whomsoever negotiated—from the date his service began under the contract on December 6, 1924, until his retirement on December 31, 1925, pursuant to the stipulated 30 days' prior notice then given him, on which it was not paid him, except this 5,000-acre Johnson transaction. He so testified on this trial, and no witness disputed, saying further that he was then still receiving monthly some of those commissions on sales that had been completed after he left.

So that, upon the whole case, notwithstanding the recognized force of a contrary opinion, entertained alike by the Chief Justice and plaintiff in error's able counsel, we are constrained to adhere to the judgment before rendered.

The motion for rehearing will be overruled.

Overruled.

PLEASANTS, C. J., dissenting.