29292, 29293.  MENDENHALL *v.* ADAIR REALTY AND
LOAN COMPANY, and *vice versa.*

Decided March 20, 1942.  Rehearing denied April 2, 1942.

*John E. Feagin, Mildred L. Kingloff,* for Mendenhall.
*Jones, Powers & Williams, Hugh M. Dorsey Jr.,* contra.

STEPHENS, P. J.  On February 17, 1941, Adair Realty & Loan
Company, a licensed real-estate broker, brought suit on two counts
against C. M. Mendenhall.  In the first count the petition alleged
that the defendant was indebted to the plaintiff in the sum of
$750 as commission due it by reason of a sale of certain real estate
for the defendant; that the defendant entered into a contract with
the plaintiff as a real-estate broker whereby the defendant listed
with the plaintiff certain real estate known as "Jefferson Heights
Subdivision," to be sold by the plaintiff for $15,000, and agreed
that if the plaintiff could sell such property at that figure he would
pay it a commission of 5 per cent. or $750; that the plaintiff had
complied with such contract and had earned its commission by
procuring a purchaser who agreed to purchase the real estate but
who was unwilling to purchase it for $15,000 cash; that the de-
fendant and this purchaser, Chester Wilson, on or about May 23,
1938, "executed a contract whereby this property was sold to Wil-
son for $22,640, Wilson agreeing to grade and develop the prop-
erty, and being allowed to pay the purchase price provided for,
from a resale of the lots comprising this subdivision;" that the
defendant agreed to pay the plaintiff its commission as soon as he
should receive the $15,000 under the contract with Wilson; that
the defendant is now due it the commission agreed on for the rea-
son that the defendant has received $15,000, or more, in cash or
its equivalent, namely, $12,500 in cash and in excess of $3000 in
purchase-money notes; that, in addition thereto, the defendant and
Wilson had a final accounting "and at that time cancelled their
sales contract by mutual agreement, and the defendant received
back from Wilson approximately forty lots  .  .  which had not

been sold and which were worth in excess of $3500, and were located in a well-developed residential section . . and greatly enhanced in value as a result of the development of this property under the defendant's contract with W. C. Wilson;" that the defendant on demand refused to pay to the plaintiff the sum sued for.

In the second count the plaintiff alleged that it was a duly-licensed real-estate broker; that on or about April 23, 1938, the defendant placed with it for sale at $15,000 the property referred to in the first count, and agreed to pay the plaintiff a commission of 5 per cent. or $750 if such property was sold by it at $15,000; that such property was offered by the plaintiff for sale to W. C. Wilson; that Wilson was unwilling to purchase the property for $15,000 cash, but that as a result of negotiations the defendant and Wilson "on or about May 23, 1938, executed a contract whereby this property was sold to Wilson for $22,640, Wilson agreeing to grade and develop the property, and being allowed to pay the purchase price provided for from the resale of the lots comprising this subdivision;" that the defendant has received from the sale of such lots cash and purchase-money notes in excess of $15,000; that prior to November, 1940, the defendant had received in excess of $12,500 in cash as his part of the proceeds of the sale of these lots, and at that time he also held in excess of $3000 of unmatured purchase-money notes, and that in addition the defendant and Wilson had a settlement about November, 1940, and "at that time cancelled their sales contract by mutual agreement, and the defendant received back from Wilson approximately forty lots . . which had not been sold and which were worth in excess of $3500;" that the purchaser of the property, W. C. Wilson, was produced and brought to the defendant through the plaintiff's efforts, and that the plaintiff was the procuring cause of the sale which was accepted by the defendant, and from which he has received substantial benefits as above alleged, and the plaintiff is entitled to recover of the defendant "the reasonable value of the services performed by it in producing said purchaser and selling said property on terms accepted by defendant, and the reasonable value of said services amounted to not less than the sum of $750;" that the defendant had on demand refused to pay such sum to the plaintiff.

The defendant denied liability. He denied that the plaintiff had produced a purchaser for his property "who was willing, ready, and able to buy for cash at defendant's price, and as a matter of fact, since no sale of the property was made except to other parties under said sales authority granted to said Wilson in defendant's contract with him" that the defendant was not liable to the plaintiff in the sum sued for or in any other sum whatsoever. At the conclusion of the evidence the defendant moved for a direction of a verdict in his favor on both counts of the petition. The court overruled the motion for a directed verdict on count 2 but sustained the motion as to count 1, and directed a verdict for the defendant as to this count. Exceptions pendente lite were filed by the plaintiff assigning error on this ruling. Pursuant to the motion by the defendant for a directed verdict the court charged the jury that the first count be eliminated from the jury's consideration, and that the jury was concerned only with the second count, and to this charge the plaintiff excepted pendente lite. The trial under count 2 resulted in a verdict for the plaintiff in the sum of $750. The defendant moved for a new trial on the general grounds, and by amendment added special grounds which will be dealt with in the opinion. The judge overruled the motion, and the defendant excepted by direct bill of exceptions. The plaintiff assigned error on its exceptions pendente lite in a cross-bill of exceptions.

Count 1 is on an express agreement to pay the plaintiff a commission of $750 when the defendant realized from his contract with Wilson $15,000. Count 2 is for the value of the services alleged to have been rendered to the defendant by the plaintiff as the procuring cause of the execution of a contract of sale of the property between the defendant and Wilson, which services it is alleged were accepted by the defendant. It is alleged that this indebtedness arose out of the fact that the defendant had listed with the plaintiff, the property for the purpose of its being sold by the plaintiff as a real estate broker at $15,000; that the plaintiff found Wilson as a prospective purchaser of the property and got him and the defendant together, and that, as a result of this, the defendant and Wilson entered into a contract; that the defendant, with knowledge of the plaintiff's efforts with Wilson, negotiated the contract with Wilson which it is alleged was a contract for the sale

of the property to Wilson for $22,640. It is alleged that the value of the plaintiff's services as a real estate broker thus rendered was $750.

The plaintiff alleged in count 2 that the contract which the defendant negotiated with Wilson was a contract by which the property was "sold" to Wilson and in which Wilson agreed and undertook to develop the property and pay the purchase price to the defendant from the resale of lots made according to the subdivision of the property. The evidence was undisputed that the defendant and Wilson, in connection with a man named Grant, got together and executed the contract with Wilson. The contract was one by which Wilson was to develop the property and sell various lots into which the property was to be subdivided, and the defendant was to receive part of the purchase price from the sale of the lots and Wilson the balance of such purchase price. This contract was to last for a stated period, with the right in Wilson to cancel it at his option. It appeared that after the defendant had realized a considerable sum, consisting of several thousand dollars in money and notes, by reason of the sales of lots to customers under this contract with Wilson, the contract was cancelled and the defendant took back a number of unsold lots. While the defendant in his testimony denied that the plaintiff brought him and Wilson together, or notified the defendant that the plaintiff had contacted Wilson in an effort to sell Wilson the property, Adair testified that he had been contacting Wilson and did so notify the defendant. The evidence authorized a finding that the defendant, with knowledge of the fact that the plaintiff had contacted Wilson in an effort to sell Wilson the property and had so notified the defendant, intervened with the plaintiff's consent and negotiated with Wilson and executed with Wilson the contract referred to. The evidence also authorized a finding that the plaintiff, with the knowledge of the defendant, rendered the latter valuable services in procuring Wilson as the alleged purchaser of the property who entered into the contract with the defendant, which services the defendant accepted and were of the value of $750. There was evidence that the defendant, after the completion of the contract with Wilson, and after a great many lots had been sold to customers under the contract, wrote the plaintiff a letter stating that the plaintiff had rendered to him valuable services in the matter and

that the defendant was indebted to the plaintiff therefor, and that it was "agreeable" to the defendant to "pay 5 per cent. commission on the $15,000 if and when produced by Mr. Wilson." This authorized a finding of an admission by the defendant that the services rendered by the plaintiff were worth $750. Mr. Adair testified that the value of the services was $750.

It is a well-recognized rule that where the owner of property has listed it with a real-estate broker to be sold, and the broker procures a prospective purchaser, and the owner with knowledge of this fact intervenes or sells the property to the customer or prospective purchaser procured by the broker, an inference is authorized that the broker has earned a commission and can recover it from the owner.

The defendant contends that the evidence failed to show that any contract of "sale" of the property was made by him with Wilson; that because no "sale" was made, the plaintiff had not earned any commission; that the property had been listed with the plaintiff for the purpose of its being "sold." The defendant claims that he negotiated with Wilson a contract by which Wilson was not to buy the property but was to act as a seller or agent of the defendant to develop the property and sell it off in lots. It appears from the contract with Wilson, which was in writing, that the defendant agreed to "sell" the property to Wilson and that it was the defendant's purpose to "sell" the property to Wilson; that the relationship between the defendant and Wilson was that of "vendor and vendee," and that the provisions of the contract were "intended to furnish an easy method for said Wilson to pay the purchase price for said land." The contract provided that the defendant was to be paid a portion out of the sale of each lot as the lot was sold, and that Wilson would receive the balance. The contract was put into execution, and many lots were sold, and the defendant and Wilson received their respective portions in money or notes secured by the lots sold, amounting to thousands of dollars. It is certainly inferable that the contract with Wilson was one by which the defendant was enabled to sell lots out of the property and receive substantial payments as the purchase money for the sales of the lots sold. It is inferable that the contract was a contract of sale by the defendant to Wilson.

It is contended by the defendant that the contract was subject

to cancellation at the option of Wilson, and that therefore no binding contract was entered into. If this be so, the contract was at least partly performed by both parties, and many lots were sold under it, and the defendant received substantial payments on the purchase money before the contract was cancelled. Where a real-estate salesman procures for a customer only an option to buy and the option is afterwards exercised and a contract of sale thereby results, the broker has consummated the contract and has earned a commission. 4 R. C. L. 322, 9 C. J. 603. See also Kinsland v. Grimshawe, 146 N. C. 397 (59 S. E. 1000).

There is no merit in the insistence by the defendant that there was a contract that he was to pay to the plaintiff a commission only when the defendant should have realized $15,000 out of the contract with Wilson. The plaintiff alleges in the amendment to the petition that, after the execution of the contract by the defendant with Wilson, the defendant promised to pay the plaintiff $750 when the defendant should have realized $15,000 out of the Wilson contract, "and that the plaintiff agreed thereto, and in reliance thereon, forbore the presentation of its claim." The defendant contends that this so-called agreement is the only contract under which he owes the plaintiff any commission. This alleged contract to pay a commission was made after the rendition of the services by the plaintiff to the defendant, and after any implied contract to pay the value of such services had arisen. The promise of the defendant to pay $750 as a commission when he should have received $15,000 from Wilson was no more than a promise made for a past performance. This constituted no valid or legal consideration for the promise. It is clearly inferable that this agreement, by which the plaintiff would wait for the collection of his commission until the defendant should have realized $15,000 from the Wilson contract, was a mere manifestation of an intention and a promise to indulge the defendant in the payment of the money. It is therefore not established as a matter of law that a valid contract was made between the plaintiff and the defendant by which the defendant would pay to the plaintiff a commission only when the defendant should receive $15,000 from the Wilson contract.

The evidence authorized the verdict for the plaintiff, in the sum of $750, as the value of the services rendered to the defendant by the plaintiff on an implied contract to pay therefor under the second count of the petition.

Error is assigned on the charge of the court that when one renders valuable services to another which the latter accepts a promise to pay the reasonable value thereof is implied, in that it was not stated that the recipient of the services must have knowledge that they had been rendered by the person rendering the services. This charge in so far as it goes is a correct statement of the law. There is no error as assigned in this charge, since the court elsewhere clearly instructed the jury that if the plaintiff had never communicated with the defendant regarding Wilson until after the defendant entered into the contract with Wilson there could be no recovery.

The charge to the jury that where a broker has been instrumental in procuring a purchaser he is entitled to a commission notwithstanding the owner consummated the actual sale to the purchaser procured by the broker, was not error on the ground that the evidence failed to show that the plaintiff had procured a purchaser, or that the owner consummated the actual sale with the purchaser procured by the broker. The charge was applicable to the evidence since it appeared from the evidence, as above indicated, that the jury was authorized to find that the property had been sold by the defendant to Wilson under a contract of sale.

For the reasons outlined above there is no error as assigned in ground 7 that the charge therein complained of was not adapted to the evidence on the issues made under the pleadings and the evidence.

Certain evidence as to the value of notes which the defendant had received from purchasers on the purchase price of lots sold, and which the defendant had discounted by selling them to another person for less than their face value, was properly admitted under the allegations of the first count, in which the plaintiff sued on an alleged contract by which the defendant was to pay the plaintiff a commission when the defendant realized $15,000 from the sale of the lots. The direction of a verdict for the defendant under the first count did not occur until after all the evidence had been adduced. There appears no motion afterwards made by the defendant to strike this testimony. Besides, such testimony was not harmful, and could have had no harmful effect with the jury on the trial of the only issue made, which was under the second count, that the plaintiff was seeking to recover the value of the

services rendered to the defendant in procuring Wilson as a purchaser for the property.

The court did not err, as insisted in ground 9, in excluding evidence offered as to conversations and occurrences in which the defendant, Mr. Adair, and a Mr. Waddell participated. It does not appear what these occurrences or conversations were.

The evidence authorized the verdict and no error appears. Whether or not the court erred in directing a verdict for the defendant on the first count is. immaterial. It is therefore unnecessary to consider the cross-bill of exceptions.

*Judgment affirmed , on the main bill of exceptions. Cross-bill dismissed. Sutton and Felton, JJ., concur.*