CARROLL, Judge.
The appellants, registered real estate brokers, filed suit against the sellers of certain real estate for a brokerage commission. On motions of the defendants, the initial complaint was dismissed with leave to amend. An amended complaint met the same fate, and when the plaintiffs elected to stand thereon, the trial court entered judgment in favor of the defendants. The plaintiffs appealed.
As amended, the complaint alleged that in 1958 the appellees, owners of certain described real estate, engaged the appellant brokers to procure a purchaser therefor, agreeing to pay a commission of $68,000 for sale of all of the property or a proportionate commission for sale of part thereof ; that plaintiffs procured a purchaser, a corporation, which entered into an option agreement with the sellers on December 24, 1958, a copy of which was attached to the complaint. The option granted was to February 15, 1959, with provision for several renewals, upon payment of specified sums, to December 31, 1959. It was provided therein that notice of election to exercise the option should be accompanied by payment of $37,500, whereupon the option would ripen into a contract of sale. The total purchase price stipulated was $750,000, and the terms of payment were set forth. It was provided that the amount or amounts paid for the option or renewals thereof would be credited on the purchase price, upon closing.
Of even date with the option agreement, the sellers and the brokers entered into an agreement for payment of commission. Included therein was a paragraph as follows :
“It is understood between us that, if said option is exercised by the purchaser *306 and if the transaction is closed in accordance with the option agreement, you shall pay a commission to us in the sum of $68,000, payable $34,000 out of the cash portion of the purchase price at the time the sale is closed and $34,000 out of the first annual payment required by the mortgage, which will be due and payable one year after the date of closing, said two payments totalling the total commission of $68,000.”
The complaint further alleged that the sellers and the purchaser entered into two additional written agreements by and under which numerous extensions of the option were provided for and made, and that on January 27, 1961, the brokers gave the sellers a letter relating that a purchase of two thirds of the property was expected to be made by the purchaser, within the next few months, under the original option as extended, for which the brokers would become entitled to the proportionate part of their full commission, and referring to a new option which was to be granted to the purchaser on the remaining one third of the property, and providing that the brokers would not receive a commission on any part thereof not sold under such option.[1] Appended to that letter was the written agreement thereto, signed by the sellers on January 31, 1961.
It was alleged that (as predicted in that letter) the purchaser exercised the option and purchased two thirds of the property by a sale which was closed on May 10, *307 1961, and that the brokers were paid their proportionate commission for that sale.
It was further alleged that (as contemplated in said letter of January 27, 1961) the sellers and the purchaser entered into a written option agreement on April 14, 1961, for a period of two years, to April 30, 1963, covering the unsold one third of the property. As consideration therefor, in addition to a recited $10, the purchaser was required to pay $719 per month to the seller, which it was alleged was done. The price fixed for the unsold one third of the property was $287,256, and as described it consisted of four numbered lots in a certain quarter section of land. That option agreement provided that upon a purchase thereunder credit would be allowed for the monthly payments which had been made pursuant thereto.
The amended complaint further alleged that by mutual oral agreement of the sellers and the purchaser, supported by consideration, said option agreement of April 14, 1961 was extended, and that the period for which it was extended continued to and beyond the date of March 5, 1968, on which the purchaser, in exercise of said option as extended, purchased one of the four lots covered thereby, and paid therefor the sum of $75,600. It was based on that sale that the plaintiff brokers sought recovery of a commission, for a proportionate amount of the total commission corresponding to the portion of all of the property which that sale represented.
Neither the final judgment nor the two orders granting defendants’ motions to dismiss stated the ground or reasons upon which the trial court concluded the complaint or amended complaint failed to state a cause of action. However, from the motions to dismiss, and the briefs and arguments here, it is shown that the cause was rejected by the trial court on the theory that where the purchaser did not exercise the option during the original period thereof, but did so during the period to which the option was extended (by mutual agreement of the sellers and the purchaser, for consideration), no commission was payable to the brokers on such sale.
In support of that proposition, the appel-lees argue that in order for the brokers to be entitled to a commission in such circumstance, it would be necessary for their commission contract to include an express provision to pay a commission on a sale made during a period for which the option was extended. The appellants argue that an agreement to pay commission for a sale made upon exercise of an option which is granted to a purchaser, necessarily entitles the brokers to a commission if the sale is not made during the initial option period granted, but is made based on election by the purchaser to exercise the option during a period for which the option is effectively extended.
Upon weighing those arguments of the parties we hold the former, asserted by the appellee sellers, is unsound, and that the latter, advanced by the appellant brokers, is correct. To hold otherwise would appear not only to be contrary to law, but unreasonable in the circumstances of this case. This is so because prior to the purchase of two thirds of the property in May of 1961, the parties had entered into several successive written agreements relating to the option under which approximately a dozen extensions of the original option period were provided for and made, yet when a sale was made of two thirds of the property in May of 1961, under the original option agreement as so extended, the sellers readily recognized the brokers’ right to a proportionate commission for sale of that part of the property, and paid the commission. Additionally, it is alleged that the brokers continued to work on the project and performed advisory services to the sellers. Also, it is indicated the sellers and the purchaser considered the option as remaining in effect at the time of the sale of March 5, 1968, first by the sellers acknowledging and accepting the purchaser’s election, and selling a portion of the remaining property to the purchaser at that time, and *308 secondly by their subsequent mutual agreement, on March 8, 1968, to cancel the April 14, 1961, option as extended, as it related to the then unsold remainder of the one third of the property which had been covered by that option.
' In support of their position the appellees cite and rely on two Florida decisions, neither of which justifies their reliance. Plumbing Industry Program, Inc. v. Good, Fla.App.1960, 120 So.2d 639, and Gower-Goheen Realty, Inc. v. Braun, Fla.App.1968, 215 So.2d 499. In each of those cases the claim for a commission was for a sale made after expiration of an option period which had not been extended.
In the cases which have come to our attention where the precise question involved here has arisen in other jurisdictions, it has been decided in accordance with the contention made by the appellants in this case. Thus, in Kinsland v. Grimshawe, 146 N.C. 397, 59 S.E. 1000, where the services of a broker for producing a purchaser were the basis of an agreement to pay the broker a commission for sale of the property if made during a 30-day option period granted to the purchaser, and the purchase was not made during that period but was made during a subsequent period for which the option was extended, the court rejected the contention of the seller that the broker’s right to a commission terminated at the end of the period provided for in the option and did not apply to the sale made during the period for which the option had been extended. In that case the court said:
“ * * * Defendant insists that his contract was to pay plaintiff a commission if he made a sale within 30 days. It is true that defendant had the right to put an end to the option and the relation of agent at the expiration of the 30 days from May 27, 1903, if he had chosen to do so. It may be that, if on June 11, 1903, when plaintiff and Bourne went to see him to get the extension, defendant had not consented to it, Graves would have raised the money and taken the land by June 27, 1903, the day upon which the option expired, in which case plaintiff would have been entitled to his commission. By extending the option and retaining the opportunity to sell upon the terms of the original option and finally selling and receiving the money, we think that the finding of the jury that the agency continued was correct. * * *”
Also, in Odell v. Wessinger, 1936, 54 Ga.App. 838, 189 S.E. 367, the court reached a similar conclusion, and therein said:
“* * * Where a contract of lease contains also an option to the lessee to purchase the property at a price and on terms as stated ‘at any time during the time this lease is in effect,’ with an agreement by the lessor owner to pay to the broker a commission of 5 per cent, of the purchase price ‘in the event this option is exercised,’ and where, before the expiration of the lease, the lessor and lessee extend it for an additional six months, within which time the option is exercised and a deed is made, the lessor will still be liable to the broker for the agreed commissions just as if the option had been exercised during the original term of the lease.

“* * * Cases to the effect that there must be an exercise of the option or a completion of the broker’s services within the time limited by the contract, unless there is a showing of fraud or bad faith by the owner toward the broker by the owner’s sale of the property to the prospective purchaser after the expiration of the contract time, are without application in the instant case, where the period of the contract was extended by the lessor himself. See Emery v. Atlanta Real Estate Exchange, 88 Ga. 321, 14 S.E. 556; Doonan v. Ives, 73 Ga. 295(1, a); Morris v. Jackson, 9 Ga.App. 848, 72 S.E. 444, where there was no such extension by the owner.”
*309 Nor do we find in the brokers’ letter of January 27, 1961, any language which would preclude the application to this case of the law as above outlined. In addition to confirming the right of the brokers to a commission for the first sale of two thirds of the property which was then in prospect, the letter had reference to the new written option agreement which was to be made for a two year period on the remaining one third of the property, and confirmed the right of the brokers to receive a proportionate commission for property sold under that option.
The appellees would construe the final paragraph of that letter (quoted in footnote No. 1) as amounting to a provision that there would be no commission payable unless a purchase was made during the two year period provided for in the written option of April 14, 1961. In our view, the last paragraph of the letter is not susceptible of that construction. What it did provide was that if the purchaser should not purchase any of the property (which had reference to the two thirds, later purchased, as well as the other one third), no commission would be payable. That proposition, of course, is obvious. It then provided that if a purchase of two thirds, as contemplated, should be made, a proportionate commission would be paid therefor at the time of closing that sale, but that no commission would be payable on “the remaining property not purchased under the new option.” That provision of the letter brings into focus the proposition as here determined in the brokers’ favor, that an agreement to pay commission upon exercise of an option will apply to a period for which the seller extends the option, in the absence of an express provision to the contrary in the option agreement or in the commission contract, and there was no such contrary provision here.
Nor do we consider the fact that the sale for which commission is sought was not of all of the property covered by the last written option, but was only of one of the four parcels covered thereby, should operate to deprive the brokers of their proportionate commission for the part which was so sold during the period for which the option was extended. This is so because notwithstanding the option as extended covered four parcels making up the remaining unsold one third of the property, the sellers acceded to the election by the purchaser to exercise the option (as extended) on only the one lot or parcel thereof, and sold the same pursuant to the terms of the extended option, after which the parties by mutual agreement terminated the option as it applied to the other three parcels which were covered thereby.
For the reasons stated, the order dismissing the amended complaint and granting judgment for the defendants is reversed, and the cause is remanded for further proceedings not inconsistent herewith.
Reversed and remanded.

. “We understand that the purchaser under the above option is not able to obtain F.H.A. financing on the entire 114 acres described in the option but expects within a month of two to obtain such financing with respect to 67.647 acres of said land. We also understand that the purchaser wishes to exercise the option on 73 acres (including said 67.647 acres), if its finances permit, within the next two or three months, and that you are willing to permit such partial exercise of the option. You have advised us that the purchaser has requested that on the closing of the 67.647 acres, or the 73 acres, as the ease may be (hereinafter sometimes referred to as the approximate two-thirds of the property) it be given a one or two year additional option on the remaining part of the 114 acres and that you will be willing to give such an additional option.
“It has been understood and agreed between us that if the option is partially exercised and the transaction closed on said approximate two-thirds of the property, whether the closing should actually cover 67.647 acres or 73 acres, we shall be paid that proportion of $68,060.00 (the commission provided for under our present agreement if the entire 114 acres had been purchased) which the number of acres actually purchased and closed upon bears to the total 114 acres. For example, if, under the present option as it is now extended or as it may be further extended, the purchaser should close the sale with respect to 73 acres, then, upon the closing and payment therefor in cash, the commission payable to us would be 77Íi4ths of $68,000.00, but if the purchaser should close and pay cash with respect to only 67.647 acres, the commission which shall be payable to us on such closing shall then be 67.64%14ths of $68,-000.00. It is further understood between us that if the purchaser should hereafter exercise the new option in accordance with its terms with respect to the property which it does not expect to purchase now or within the next two months or so, then a similar proportionate commission will become payable to us upon the closing and completion of the sale of the property described in the new option. For example, if the new option should cover the 41 acres, as presently contemplated, and if the right to buy thereunder is exercised and the sale of said 41 acres is closed and completed, we would then be entitled to receive as our commission in connection with the sale of said 41 acres ^/mths of $68,000.00.
“If the purchaser does not exercise the option and complete the closing with respect to any property there will be no commission payable by you to us. If the purchaser should complete the purchase of said approximate two-thirds of the property within the next few months as now expected but should not exercise its proposed new option and complete the purchase with respect to the remainder of the 114 acres, the commission with respect to the approximate two-thirds closed upon will be payable at the time of the closing, but there will be no commission payable with respect to the remaining property not purchased under the new option.”