IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

---

## Richmond.

FERGUSON & FRIES v. GOOCH, TRUSTEE.

December 3, 1896.

94  1
96  221

94  1
100  723

94  1
101  243

94  1
107  55

1. PRINCIPAL AND AGENT—*Agent for Buyer ond Seller—Voidable Contract—Confirmation.*—A man cannot be the agent of both the buyer and the seller in the same transaction, without the intelligent consent of both parties; nor can an agent act for himself and his principal, nor for two principals on oposite sides in the same transaction, without like consent. All such transactions are voidable, and may be repudiated by the principal without proof of injury on his part. Nothing will defeat this right of the principal except his own confirmation after full knowledge of all the facts. The object of this principle is to remove all possible temptation from the agent.

2. PRINCIPAL AND AGENT—*Real Estate Agents—Buyer and Seller—Custom or Usage of Trade—Case at Bar.*—A custom or usage of real estate agents to get up syndicates to purchase real estate in their hands for sale cannot affect a purchaser who has no knowledge of such custom. To be secretly in the service of one party, while ostensibly acting solely for the opposite party, is a fraud upon the latter, and a breach of public morals which the law will not permit. A custom of trade cannot change the intrinsic character of the contracts of parties who are ignorant of such custom. In the case at bar the notes held by appellants and the deed of trust made to secure them, were each executed by one who had no authority to execute them, and the evidence fails to show that the principals, after full knowledge of all the facts, confirmed or ratified the acts of those who professed to act in their behalf.

Argued at Wytheville. Decided at Richmond.

Appeal from a decree of the Hustings Court of the city of Roanoke pronounced December 15, 1894, in a suit in chancery wherein W. S. Gooch, trustee, was the complainant, and L. L. Powell, trustee and others were the defendants, in which appellants filed their petition.

*Affirmed.*

*Scott & Staples,* for the appellants.

*Hansbrough & Hall, S. S. P. Patteson* and *Phlegar & Johnson,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

In the year 1890, Mc. C. Willis, who was the owner of certain lots in the city of Roanoke, on which there were two deeds of trust, one to secure to G. A. Camp the payment of two notes for $2,000 each, and the other to secure the payment of two notes of $1,333.33 each, payable to J. J. Roberts, conveyed the lots to the Old Dominion Investment Co. in consideration of the sum of $12,000. Of this sum it was to pay a portion in cash, assume the payment of the debts due Camp and Roberts, and execute a note for $2,000, the residue of the purchase money, and secure it by a deed of trust upon the lots. Soon after the purchase of the property by the Old Dominion Inv. Co., L. L. Powell & Co., real estate agents in that city, and through whom it made its purchase, approached the President of the Old Dominion Inv. Co. to know if that company would sell the property at the price of $15,000, as it had not yet paid anything upon it. After consultation with the Secretary, the President agreed to sell it at that price. To whom the property was sold by Powell & Co. does not clearly appear. There being some delay in

closing the contract, the President of the Old Dominion In-
vestment Co. spoke to Powell about the delay, and he said he
was getting up a "syndicate" to take the property.    The
syndicate which was gotten up consisted of some nineteen or
twenty persons, among whom were L. L. Powell & Co., and
the Old Dominion Inv. Co.    The paper which evidenced the
agreement between the members of the syndicate was lost or
·mislaid, but its contents were proved, and are substantially as
follows:  We, the undersigned, hereby agree to take the amount
set opposite our respective names in the syndicate organizing
for the purpose of purchasing certain lands at the price of
$18,000.    After the sum of $18,000 had been subscribed,
L. L. Powell & Co. collected from the greater portion of the
members of the syndicate the cash payment due from each.
At the instance of L. L. Powell, Gooch, the President of the
Old Dominion Inv. Co., on the 8th day of November, 1890,
executed a deed for his company, by which it conveyed the
lots to him as trustee for the members of the syndicate (nam-
ing them and stating what the fractional interest of each was
in the lots conveyed), at the price of $18,000.    The deed
acknowledged the payment of $4,666.66 in cash, and Gooch,
trustee for the syndicate named, "assumed and agreed to pay
off and discharge the following interest-bearing negotiable
notes:  two notes for the sum of two thousand dollars ($2,000)
each—said notes executed by D. R. Bowman, and made due
and payable to Georgia A. Camp, at the National Exchange
Bank of Roanoke, Va., at one and two years respectively
from date of June 13, 1890; two notes for the sum of thir-
teen hundred and thirty three dollars and thirty-three cents
($1,333.33), each, executed by Mc. C. Willis, and made due
and payable to J. J. Roberts, at the National Exchange Bank
of Roanoke, Va., at one and two years respectively from
date, September 13, 1890; and one note for the sum of two
thousand dollars ($2,000), executed by the Old Dominion
Inv. Co., and made due and payable to Mc. C. Willis at four (4)

months from date of September 17, 1890—all of said notes bearing interest at the rate of six *per cent. per annum* until paid. The residue ($4,666.66), as evidenced by four interest-bearing notes of date herewith: two notes for the sum of $1,500 each, and two notes for the sum of $833.34 each, said notes executed by W. S. Gooch, trustee, and made due and payable to the Old Dominion Inv. Co. as follows: one of each of said notes payable one year from date hereof, and one of each at two years from date hereof, all of said notes payable at the Citizens Bank of Roanoke, Va., with interest at the rate of six *per cent. per annum* until paid." To secure the $4,666.66, for which Gooch, trustee, executed his four notes as above stated, he executed a deed of trust contemporaneously with the deed made to him by the Old Dominion Inv. Co.

Upon the failure of Gooch, trustee, to pay the $2,000 note payable to Mrs. Camp, due one year after date, the trustee, L. L. Powell, in the original deed of trust to secure it, advertised the lots for sale at the instance of the Fidelity Trust and Loan Co., the then holder of the note. Thereupon Gooch, trustee, filed his bill to enjoin the sale. After setting out what debts were liens upon the lots, he alleged that he had no interest in the property; that he became trustee to oblige the parties interested; that the beneficiaries, or members of the syndicate, were all in default in making payments; that there were funds in the hands of L. L. Powell & Co. arising from the rents of houses upon the lots; that he held the mere legal title to the property, and has no means of enforcing collections from members of the syndicate, or of compelling Powell & Co. to pay over the funds in their hands; that there was a controversy between some of the members of the syndicate and L. L. Powell & Co. over the property purchased, and that he was unable to administer the trust without the aid of a court of equity; that a sale of the property under the circumstances would result in great sacrifice, made

the persons interested parties to the bill, prayed for an injunction, and that the trust might be administered by the court, that he might be allowed to resign, and for general relief.

During the progress of the litigation Ferguson and Fries, the appellants, came into the case by petition, alleging that they were the owners of the notes executed by Gooch, trustee, for the $4,666.66; that they had acquired them before maturity, and were entitled to have them paid, and also asked to have the sale of the lots postponed until the liens could be ascertained, the liabilities of the debtors and the rights of creditors fixed, and the title to the property cleared of the clouds upon it. Some of the persons who had agreed to become members of the syndicate appeared and made defence; but others did not. Upon the hearing of the cause the trial court was of opinion that there was "no valid contract of purchase of the lots named in the deed of November 8, 1890, that was binding upon any of the beneficiaries named therein, except L. L. Powell & Co.; and that they were not liable for the purchase price of the lots or any part thereof, and decreed that the deed of November 8th, between the Old Dominion Inv. Co. and Gooch, trustee, and the deed of trust executed by him on the same day to secure the purchase money due the Old Dominion Inv. Co, to be void, except as to L. L. Powell & Co.

It further decreed that L. L. Powell & Co. should refund to the other members of the syndicate the moneys paid by them on account of the purchase of the lots, with interest.

It also decreed that the lots should be sold to satisfy the liens upon them as reported by the commissioner, except in so far as that report was modified by its decree.

From that decree Ferguson & Fries appealed. Neither of the other parties to the controversy is seeking to have the decree reversed.

The only question we have to consider, therefore, is whether

there is any error in the decree appealed from to the prejudice of the appellants.

The right of the appellants to have the deed of trust executed to Gooch, trustee, enforced, depended upon the question whether Gooch, trustee, was authorized to make the notes held by them, and give a deed of trust upon the lots to secure their payment.

It clearly appears that Gooch, trustee, was not selected as trustee by the members of the syndicate other than Powell & Co., unless Powell & Co. had the right to select him for them. It is not pretended that either of them, except Powell & Co., ever spoke to Gooch upon the subject, or even knew of his action for months afterwards, unless perhaps it be the Old Dominion Inv. Co. of which he was President. Powell & Co. had not, by virtue of their authority as real estate agents, nor by reason of their relation as tenants in common, or co-owners with the other members of the syndicate, the right to select a trustee for them, or to do, or to authorize to be done, for them, any of the acts attempted to be done by Gooch, trustee. *Halsey* v. *Monteiro*, 92 Va., 581.

It is claimed that the syndicate was a partnership, and that Powell & Co., under their authority as partners, had the right to select a trustee to hold the title for them, and also to authorize him to make the notes for the purchase price, and to execute the deed of trust upon the lots to secure the notes.

The agreement between the members of the syndicate, by which they undertook to subscribe $18,000 for the purpose of buying the lots, is the only contract between them. It does not appear that the parties to that agreement ever considered the question, or determined how the property was to be held, further than is shown by the agreement itself. Their relations to each other must, therefore, be determined by the terms of that paper. It provided for raising money with which to purchase certain lands at a given price. There

is no provision in it for selling the lands and dividing the profits. It may have been, and probably was, the intention of the parties in that era of wild speculation to sell the lots and divide the profits, but that does not appear from that agreement, which is the only contract between the parties in reference to the matter. It is wholly wanting in the essentials of a partnership agreement, nor does it show that the parties intended to do those acts from which a partnership could be inferred.

In no view of the case did Gooch have any authority to act as trustee, or bind the members of the syndicate other than Powell & Co., in making the notes held by appellants, and in executing the deed of trust to secure them.

If it be admitted that the appellants were entitled in equity to so much of the purchase price of the lots as was equal to the amount of the notes held by them, their right to subject the lots, or to have a personal decree against the members of the syndicate, therefor, would depend upon the question whether under the facts of this case a court of equity would specifically execute the alleged agreement for its sale and purchase.

The contract of sale and purchase, if made at all, was made by Powell & Co., representing both the vendor and the vendees. They were the agents of the vendor or vendors to sell the lots, and were to receive, and did receive, a commission for making the sale. They worked up the syndicate and made the contract of purchase for them, if one was made, and were also members of that syndicate and interested in its purchase. They did not disclose to the members of the syndicate, that they were the agents to sell, though some of them it appears knew this fact. Some members of the syndicate, however, especially John H. Powell, of Richmond, Va., and James S. Groves, of North Carolina, relied upon the judgment and skill of L. L. Powell in making the investment for them, and did not know until long after they had made their

cash payments that their agents were also the agents of the vendors.

Nothing is better settled than that a man cannot be the agent of both the seller and the buyer in the same transaction, without the intelligent consent of both. Loyalty to his trust is the most important duty which the agent owes to his principal. Reliance upon his integrity, fidelity, and ability is the main consideration in the selection of agents, and so careful is the law in guarding this fiduciary relation that it will not allow an agent, to act for himself and his principal, nor to act for two principals on opposite sides in the same transaction. All such transactions are voidable, and may be repudiated by the principal, without showing that he was injured. In such cases the amount of consideration, the absence of undue advantage, and other like features are wholly immaterial. Nothing will defeat the principal's right of remedy except his own confirmation after full knowledge of all the facts. Actual injury is not the principle upon which the law holds such transactions voidable. The chief object of the principle is not to compel restitution where actual fraud has been committed, or unjust advantage gained, but it is to prevent the agent from putting himself in a position "in which to be honest must be a strain on him," and to elevate him "to a position where he can not be tempted to betray his principal." "Under a less stringent rule," it was said by the court in *Parlin* v. *Woodruff*, 36 N. J. Eq., 174, 180, "fraud might be committed, or unfair advantage taken, and yet owing to the imperfections of the best human institutions, the injured party be unable either to discover it or to prove it in such manner as to entitle him to redress. To guard against this uncertainty, all possible temptation is removed, and the prohibition against an agent acting in a dual character is made broad enough to cover all his transactions. The rights of the principal will not be changed, nor the capacity of the agent enlarged, by the fact that the agent is not invested

with a discretion, but simply acts under an authority to purchase a particular article at a specified price, or to sell a particular article at the market price. No such distinction is recognized by the adjudications, nor can it be established without removing an important safe-guard against fraud. *Buckles* v. *Lafferty*, 2 Rob., 307; *Howery* v. *Helms*, 20 Gratt., 1; 1 Minor's Inst. (4th Ed.), 244; 2 Pom. Eq. Jur., sec. 959; 1 Story's Eq. Jur., sec. 315; Mecham on Agency, secs. 454, 455, 713; *Michoud, &c.* v. *Girod, &c.*, 4 How. (U. S.), 503; Story on Agency, secs. 210, 211; *Raisin* v. *Clark*, 41 Md., 158; 2 Warville on Vendors, p. 862.

It is claimed that it was at that time common for real estate agents in that city to get up syndicates to buy property in their hands for sale. No such custom or usage is proved, and if it were it could not avail unless it were clearly shown (and it was not), if then, that the members of the syndicate, many of whom did not live in or near Roanoke city, had knowledge of the usage or custom when Powell & Co. became their agents. To be secretly in the service of the opposite party, while the agent is acting ostensibly for his principal only, is a fraud upon the latter and a breach of public morals which the law will not permit. ''It is also an elementary proposition,'' said Willes, J., ''that a custom of trade may control the mode of performance of a contract, but cannot change its intrinsic character.'' In the case of *Robinson* v. *Mollett*, 7 Eng. & Irish Appeals, 802, this question was very fully discussed in the House of Lords. It was said by Baron Cleasby, in that case, after quoting sec. 20, of Story on Agency, which declares, ''that in matters touching the agency, agents cannot act so as to bind their principals where they have an adverse interest in themselves, I submit that this fundamental and important rule cannot be defeated by a usage, or as Mr. Justice Willes calls it, a lax practice of brokers which is plainly of their own creation for their convenience and advantage in the settlement of speculative deal-

ings" Again he said: "I am of opinion with the late Justice Willes, that here the importation of the usage 'does not merely control the mode of performance of the contract, but that it changes its intrinsic character;' that it converts a broker into a principal seller without the knowledge of the buyer who employs him, and that it must be rejected," pp. 829, 831.

Lord Chelmsford said in the same case, p. 838: "But the usage is of such a peculiar character, and is so completely at variance with the relation between the parties, converting a broker employed to buy into a principal selling for himself, and thereby giving him an interest wholly opposed to his duty, that I think that no person who is ignorant of such usage can be held to have agreed to submit to its conditions, merely by employing the services of a broker, to whom the usage is known, to perform the ordinary and accustomed duties belonging to such employment." In the views expressed by both these judges, the Lord Chancellor (Cairns), concurred.

Such an usage was held by the Supreme Court of Mass., in *Fernsworth* v. *Hemmer*, 1 Allen, 494 (79 Amer. Dec., 756), to be contrary to good morals, and sound policy, because it would tend to sanction an unwarrantable concealment of facts essential to a contract, and operate as a fraud on parties who had a right to rely on the confidence reposed in their agents. *Raisin* v. *Clark*, 21 Md., 158 (20 Amer. Rep., 66).

The evidence wholly fails to show that the members of the syndicate, for whom Powell & Co. were agents, after full knowledge of all the facts, confirmed or ratified the action of Powell & Co. in purchasing the lots, or in selecting Gooch as trustee for them.

Under these circumstances, without passing upon the other grounds relied on to defeat a specific execution of the agreement, it is clear that the members of the syndicate, other

than Powell & Co., could not, upon well settled principles of equity, be compelled to specifically perform the agreement for the purchase of the lots.    Pom. Spec. Per. Contracts, secs. 257-268.

Upon the whole case, we are of opinion that there is no error in the decree appealed from to the prejudice of the appellants, and as no other party is complaining of it, it must be affirmed.

*Affirmed.*