# Richmond

## BUSINESS PROPERTIES, INC. v. CLAUDE O. THOMAS, TRUSTEE, ET ALS.

March 1, 1948.

Record No. 3294.

Present, All the Justices.

The opinion states the case.

*Alfred A. Hilton* and *Mark P. Friedlander*, for the appellant.

*James H. Simmonds* and *Milton Strasburger*, for the appellees.

GREGORY, J., delivered the opinion of the court.

This suit was instituted for the purpose of requiring Business Properties, Inc., to perform specifically a certain contract made by its predecessor, John W. Banton, the former owner, and C. O. Thomas, trustee, the purchaser, whereby Banton agreed to convey to the purchaser certain described lots in Arlington county. The defense to the suit averred in the answer is that it would be "inequitable, oppressive and unconscionable" to enforce the contract. The evidence in the cause was heard *ore tenus* before the circuit court and upon it the court decreed specific performance.

The material facts are not in substantial conflict. On March 8, 1946, C. O. Thomas, trustee, acting for Alice Ginsberg and Mildred Cafritz, entered into a written contract with John W. Banton, who then owned the property, whereby Banton agreed to sell and Thomas, trustee, agreed to purchase lots 78, 79 and 80 of Lyons Addition in Arlington county for the sum of $33,000, which was to be paid as follows: $10,000 in cash, of which $3,300 deposited at the time of the signing of the contract was to be a part, and the balance of $23,000, with interest at $4\frac{1}{2}$ per cent per annum was to be paid in installments of $5,000 per year.

On May 1, and within the 60-day period agreed to in the contract, Mrs. Ginsberg and Mrs. Cafritz transferred to Thomas, trustee, the residue of the $10,000 cash payment amounting to $6,700, and they executed and acknowledged a first deed of trust upon the said property securing the deferred payment of $23,000, together with the interest of $4\frac{1}{2}$ per cent per annum, evidenced by a note made by Mrs. Ginsberg and Mrs. Cafritz and payable to the order of Banton in annual installments of not less than $5,000 per year. Thomas advised Banton that those for whom he was acting were ready, willing and able to comply with the terms of the contract; that the balance of the cash payment, the deed of trust, and the note were ready for delivery, and that they were ready to close the transaction.

Banton failed to comply with his contract even though he had been requested so to do on numerous occasions by the vendee. His attorney at first objected, stating that the contract was with Thomas and not with Mrs. Ginsberg and Mrs. Cafritz, whereupon Thomas eliminated the objection by agreeing to carry out the contract in his own name, with the understanding with Mrs. Ginsberg and Mrs. Cafritz that after the transaction was closed he would immediately execute a new deed conveying the property to them but Banton still refused to comply.

There has been an entire failure on the part of the vendor to tender any deed to Thomas or to Mrs. Ginsberg and Mrs. Cafritz, notwithstanding the fact that they have at all times been ready, willing and able to close the transaction in accordance with the terms of the contract.

On May 14, 1946, Thomas understood that Banton was planning to sell the property to Business Properties, Inc., at an increased price. Thereupon he hurriedly admitted the contract of March 8 to record but upon an examination of the records in the clerk's office at that time he found that just fifteen minutes earlier Business Properties, Inc., had admitted to record a deed bearing date May 14, 1946, made by Banton, conveying the property to Business Properties, Inc.

In the stipulation it is agreed that Business Properties, Inc., through its officers and agents, had been informed prior to its entering into any contract with Banton that he had on March 8, 1946, contracted to sell the property in litigation, and it was further stipulated that an indemnity agreement was made by Business Properties, Inc., for the purpose of saving harmless Banton and indemnifying him against any loss that might be sustained by reason of litigation which might arise under his prior contract of March 8 with C. O. Thomas, trustee.

The inception of the contract of March 8 was that Mrs. Ginsberg approached Albert Cohen, a real estate agent in Arlington, and indicated her interest as a purchaser in the property involved. Whereupon, Cohen went to Banton,

the owner, and secured from him an exclusive sales contract for the property at the price of not less than $31,000. Mrs. Ginsberg and Mrs. Cafritz, acting through Thomas, who had been engaged by them to search the title and to close the transaction, finally bought the property through Cohen for $33,000.

When it became known that the Hecht Company, operators of mercantile stores, were to locate one in Arlington near the property involved in this suit, other parties became interested in the property in this immediate locality. This new company desired several properties for their business purposes and Business Properties, Inc., was trying to secure these various properties for the Hecht Company. Business Properties, Inc., had become interested in the property involved in this suit, and after Mrs. Ginsberg and Mrs. Cafritz had bought the property it offered them $45,000 for it, but they refused to sell. The officers and agents of the corporation, after finding out that the contract between Banton and Thomas, trustee, of March 8, had not been consummated, received a deed from Banton for this same property and placed it on record fifteen minutes before the Thomas contract was recorded, as indicated above.

Through the stipulation agreed to by both parties, Business Properties, Inc., stands in the place and stead of Banton, and if the contract of March 8 could have been enforced against Banton it can now be enforced against Business Properties, Inc.

The principal assignment of error is that the real estate agent, Cohen, acted as agent for both the vendor and the vendee, and it is alleged that this would render the contract unenforceable in equity.

It seems quite apparent that a bare statement of the essential facts is sufficient to demonstrate the correctness of the challenged decree. The seeming difficulties arise by reason of the undue emphasis placed on incidental matters which are not, in themselves, controlling. When these are brushed aside and attention is focused upon the uncon-

tradicted and important facts a correct decision will be apparent.

The cause was heard *ore tenus* by the trial court and when we apply the well-established principles to a hearing of this kind we must conclude that in this case the evidence is sufficient to support the decree. The court below found against the charge that Cohen, the agent, had acted in a dual capacity.

■ It is no uncommon thing for one who desires a certain property to go to a real estate agent and inquire if he can get a price fixed upon it by the owner. This alone does not make the real estate agent the agent of the prospective purchaser if later the agent is able to list the property at an agreed price from the owner who pays the agent his full commission after the agent has made the sale to the customer.

Cohen, the agent, testified explicitly that Banton called at his (Cohen's) office and he explained to Banton that he was acting as a real estate broker and whatever price Banton fixed would have to include a five per cent commission to him as a broker. With this information, Banton fixed a minimum price of $31,000, with the understanding that if Cohen could get more he would do so. Banton knew that Cohen had a prospective purchaser in mind. He then gave to Cohen an exclusive agency contract at a price of $31,000. Later Cohen saw Mrs. Ginsberg and attempted to sell to her at $35,000, but finally sold to her and to Mrs. Cafritz at $33,000, which was $2,000 more than Banton had asked for the property.

■ If Cohen had been the agent of Mrs. Ginsberg and not the agent of Banton why would he have made her pay $2,000 more for the property than the owner wanted? If Business Properties, Inc., was entering into a fair and ordinary transaction with Banton why did he require of this corporation and why did it give an indemnity contract against any loss that might arise by reason of the contract with Thomas, trustee? These outstanding considerations were weighed by the trial court and upon them

and other ample evidence it entered the decree here involved holding Cohen to have been the agent of the owner, Banton, and not of the purchasers, and we think the evidence conclusively establishes this finding.

It may be, as subsequent events now show, that Banton made a bad bargain in selling for $33,000, and that if he had not sold the property on March 8 to Thomas, trustee, for that amount he might have obtained more for it later on. But these matters do not interpose in his favor an equity in the cause which the court should notice. Here we have no evidence of fraud or unfair dealings on the part of the purchasers. They have been guilty of no inequitable conduct and have actually agreed to pay Banton $2,000 more than he asked for the property. On the other hand, the conduct of Banton and Business Properties, Inc., is in sharp contrast with that of the appellees. Banton's inexcusable refusal to perform his contract, and the attempt of Business Properties, Inc., to assist Banton in his unfair effort to evade his valid agreement by surreptitiously offering to buy the property when its officers knew that Thomas, trustee, had already bought it, do not place either Banton or Business Properties, Inc., in a favorable position in a court of equity.

It will not be "oppressive, inequitable or unconscionable" to enforce specifically the contract of March 8.

Accordingly, the decree is affirmed.

*Affirmed.*