# Richmond

## SALVIND O. OLSON v. DAVID E. BRICKLES AND ARMANDA C. BRICKLES.

April 23, 1962.

Record No. 5400.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

*R. J. Lillard* (*Stephen L. Best; McCandlish, Lillard & Marsh*, on brief), for the plaintiff in error.

*Richard E. Hill* and *Henry M. deButts*, (*Hill, deZerega & deButts*, on brief), for the defendants in error.

EGGLESTON, C. J., delivered the opinion of the court.

Salvind O. Olson filed a motion for judgment against David E. Brickles and Armanda C. Brickles to recover the balance of $11,000, with interest, alleged to be due under the terms of a brokerage commission agreement for the services of the plaintiff in selling certain property for the defendants. The motion alleged that under the terms of the agreement the plaintiff was to receive the sum of $11,500 for his services in procuring a purchaser for the property; that he procured such a purchaser and was paid the sum of $500 on account of the agreed commission, leaving a balance due him of $11,000 with interest.

The grounds of defense admitted the execution of the commission agreement, the procuring of a purchaser, the consummation of the sale, and the part payment of $500, but denied that any balance was due to the plaintiff, because, the defendants said, (1) while acting as their agent and broker the plaintiff was guilty of bad faith and a breach of his fiduciary obligation to them, in that he actually represented and furthered the interests of the purchasers of the property to the disadvantage of them, the defendants; and (2) under the terms of the commission agreement the defendants had been relieved of the obligation to pay the plaintiff the balance of $11,000 by reason of

certain modifications in the terms of the original agreement between the sellers and the purchasers of the property.

At a jury trial there was a verdict for the defendants. The plaintiff's motions to set aside the verdict and enter a final judgment in his favor, or, in the alternative, to grant him a new trial, were overruled and judgment was entered on the verdict. We granted the plaintiff a writ of error. For convenience the parties will be referred to as they appeared in the lower court.

The only questions we need consider are whether the verdict and judgment are contrary to the law and the evidence and whether the plaintiff is entitled to a final judgment in his favor for the amount claimed.

In May, 1958, David E. Brickles and Armanda C. Brickles requested Salvind O. Olson, a real estate broker, to sell their motel for them. They were asking a total of from $200,000 to $250,000 for the property, depending upon the amount of cash received which they desired should not be more than 30% of the purchase price during the year of sale.

In December, Olson showed the property to Alton C. Boyle and wife, the eventual purchasers. Negotiations for a sale were conducted between Olson, the defendants and the Boyles. The defendants were anxious to sell, but the Boyles preferred a lease with an option to buy which was ultimately agreed upon. After a tentative lease agreement had been prepared by an attorney for the defendants, the parties met for the purpose of putting it in final form and executing it. During the negotiations Olson suggested that the lease agreement, as drafted, be changed to stipulate that the sellers, the defendants, pay the insurance and taxes for the first year and the purchasers, the Boyles, thereafter, and that the Boyles be permitted to make larger payments, in multiples of $500, than had originally been contemplated.

These changes were agreed to, the agreement was reduced to its final form, and executed on January 31, 1959. Under the terms of the lease agreement the Boyles were to lease the property for a term of five years, with the option to them to terminate the lease at the end of one year and the further option to purchase the property at $230,000 within one year.

After the execution of the lease agreement Olson and the defendants executed a commission agreement which fixed the compensation Olson was to receive. It provided, among other things, that in the event the Boyles elected to terminate the lease at the end of one year, Olson was to receive no commission; in the event the Boyles exercised their

option to continue the tenancy, Olson was to receive $1,000; and in the event the Boyles exercised their option to purchase the property and such purchase was "actually consummated," Olson was to receive a commission of $11,500, to be paid at the time of the settlement of the transaction between the sellers and the buyers.

The commission agreement further provided that, "In event any of the agreements are modified between the Lessors and Lessees, the broker shall not be entitled to any other commission."

At the time the commission agreement was signed the defendants paid Olson the sum of $500.

On August 19, 1959, without the defendants' knowledge, Olson advertised the motel for sale in a local newspaper, attempting to find a purchaser for the Boyles in case the latter exercised their option to buy. The defendants saw the advertisement but made no mention of it to Olson.

On December 29, the Boyles wrote a letter to the defendants exercising their option to purchase in accordance with the terms of the lease agreement. On January 28, 1960, a sales contract was executed whereby Brickles and wife agreed to sell and Boyle and wife agreed to buy the property for the sum of $230,000. At the request of the defendants, this contract provided for a slight modification in the method of payments which had been stipulated in the lease agreement.

The sales contract contained this further provision: "The Seller agrees to pay to the Agent cash for his services a commission on the sale price of the property at the following rate: As agreed between Seller and Agent."

The sale of the property to the Boyles was closed on March 2, 1960, and immediately thereafter Olson demanded the payment of his commission. The defendant, Brickles, refused, taking the position that Olson had "forfeited his commission," because, Brickles said, during the negotiations between the defendants and the Boyles, Olson "had worked more for the benefit" of the Boyles than for him, Brickles.

It is, of course, well settled that a real estate broker occupies a fiduciary relation to his principal and so long as that relation continues is under a legal obligation, as well as a high moral duty, to give his principal loyal service. 3 Mich. Jur., Brokers, § 13, p. 522; *Campbell* v. *Sickels*, 197 Va. 298, 302, 89 S. E. 2d 14, 18, 19, and authorities there cited. A broker cannot be the agent of both the buyer and the seller in the same transaction without the intelligent consent of both parties. *Ferguson* v. *Gooch*, 94 Va. 1, 8, 26 S. E.

397, 40 L. R. A. 234; *Williams* v. *Bolling*, 138 Va. 244, 255, 121 S. E. 270. It follows that a broker who is guilty of a breach of his obligation to his principal is not entitled to compensation. *Schmidt* v. *Wallinger*, 125 Va. 361, 377, 99 S. E. 680; 8 Am. Jur., Brokers, § 142, p. 1067; 12 C. J. S., Brokers, § 69, p. 158.

█ The principal question presented on this appeal is whether there was sufficient evidence to sustain the jury's finding that the plaintiff was guilty of a breach of his obligation to his principals, the defendants, and thereby forfeited his right to recover the agreed commission.

The defendants insist that the plaintiff broker was guilty of bad faith or a breach of his fiduciary duty to them in that during the period of negotiations leading up to the execution of the lease agreement, the plaintiff broker made a number of suggestions which were beneficial to the purchasers rather than to the defendant sellers. For example they say, the broker suggested that the insurance and taxes during the first year of the lease should be paid by the sellers rather than by the purchasers. Again, they say, the broker suggested that the purchasers be permitted to make larger payments during the first year which increased the defendants' obligation for federal income taxes. Also, the defendants say that the broker urged that the defendants execute the lease agreement without consulting their counsel about these changes.

The contention of the defendants that these suggestions on the part of Olson constituted a breach of his fiduciary obligation to them, which deprived him of his right to compensation, is entirely without merit. In the first place, there is no evidence that in making these suggestions the broker was guilty of any fraud or unfair dealing toward the defendants or exercised any pressure on them. The evidence shows without dispute that these suggested changes were openly discussed in the presence of the defendant sellers, the purchasers and the broker, and were agreed to by the defendants. After the defendants had agreed to these suggestions they were embodied in the lease agreement which they, the defendants, voluntarily executed.

In the next place, after these negotiations had been concluded and the lease agreement executed, the commission agreement was drawn and executed. By the terms of this latter agreement, and with full knowledge of the situation, the defendants obligated themselves, in the event the lessees elected to purchase the property, to pay to the broker a commission of $11,500, and then and there paid him the sum of $500 on account. Again, by the terms of the sales contract, executed

on January 28, 1960, the defendants again recognized their obligation to the plaintiff and agreed to pay him "cash for his services a commission on the sale price of the property * * * As agreed between Seller and Agent."

The defendants next say that the plaintiff broker was guilty of a breach of duty because, without their consent, he advertised the property for sale for the benefit of the Boyles. The lower court correctly ruled that this did not constitute bad faith or "double-dealing" on the part of the broker, because, it pointed out, the broker's contract of employment had been completed, he had procured purchasers who had entered into a contract to purchase the property at their election and which election they thereafter exercised.

While under the terms of the commission agreement payment of the broker's commission was deferred until the sale had been actually consummated, the right to such commission had been fixed. The attempt of the broker to sell the property for the Boyles was in no way adverse to the interests of the defendant sellers. Indeed, it was in furtherance of the sellers' interests, for if the Boyles had been able to find a buyer they would have been in a better position to exercise the option and purchase the property which the defendant sellers desired.

As is said in 12 C. J. S., Brokers, § 43, p. 106, "After termination of agency for one person a broker may act for another adversely interested without breach of trust as to the former; * * *." See also, 3 C. J. S., Agency, § 180-a, p. 75.

Accordingly, in the recent case of *Mayne* v. *Eig.*, 215 Md. 270, 137 A. 2d 557, 563, it was held that, "once the sale had been consummated and the contract of sale signed, there was no limitation upon the right of the broker thereafter to go out and represent any party that he wished, so long as he did not hinder, delay or interfere with the sale which had already been consummated and the contract which had already been signed between the purchaser and the seller whom he had brought together." To the same effect, see *Herzog* v. *Ross*, 358 Mo. 177, 213 S. W. 2d 921, 930; *Kinsland* v. *Grimshawe*, 146 N. C. 397, 59 S. E. 1000, 1002; *Jones* v. *Allen*, Tex. Civ. App., 294 S. W. 2d 259 (writ of error refused).

In *Jones* v. *Allen, supra,* it was held that where a real estate broker was engaged by the vendor to procure a purchaser for certain property, the relationship of the parties as principal and agent terminated at the time the vendor executed a binding contract for the sale of the

property, under which he became legally obligated to convey, rather than at the time of the actual conveyance.

■ Moreover, in the present case, after the defendants had full knowledge that the plaintiff had advertised the property for sale for the Boyles, they executed the sales contract of January 28, 1960, in which they reaffirmed their obligation to pay the plaintiff the agreed commission.

Clearly, then, the defendants were in no position to claim in the lower court that the plaintiff broker had violated his fiduciary obligation to them and thereby forfeited his right to the agreed commission. For, even if it be assumed that the evidence was sufficient to sustain a finding that there had been a breach of duty by the broker, the defendants waived such breach when, with full knowledge of all the circumstances, they executed the final sales contract which confirmed the commission agreement. As is said in 3 C. J. S., Agency, § 188, p. 90, "The principal, with full knowledge of all the circumstances, may waive a breach of duty on the part of the agent which would otherwise deprive the agent of his right to compensation."

The defendants argue that the issue of waiver was not before the lower court. This is not correct. In his motion for judgment the plaintiff expressly alleged that by the terms of the sales contract the defendants had ratified the commission agreement, and so contended in his objections to certain instructions offered by the defendants.

■ The final contention of the defendants is that since it was stipulated in the commission agreement that, "In event any of the agreements are modified between the Lessors and Lessees, the broker shall not be entitled to any other commission," and that since under the sales contract of January 28, 1960, there were modifications in the terms of payment the plaintiff is not entitled to the balance of the agreed commission.

The obvious answer to this contention is that despite the modifications detailed in the sales contract, the defendants therein admitted and confirmed their promise to pay the plaintiff the agreed commission. This clearly indicated that the modifications embodied in the sales contract were not such as were intended by the commission agreement to deprive the plaintiff of his right to compensation.

On the whole we find that the verdict in favor of the defendants was without evidence to support it. Furthermore, since under the evidence adduced it clearly appears that the plaintiff was entitled to recover the balance of $11,000 due him under the terms of the commission agreement, with interest thereon from March 2, 1960, the

date the sale of the property was consummated and the amount became payable, a judgment to that effect should have been entered by the lower court.

Accordingly, the judgment appealed from will be reversed, the verdict of the jury set aside, and a final judgment here entered in favor of the plaintiff against the defendants for the amount due, with interest and costs.

*Reversed and final judgment.*