## Richmond

### CHARLES R. PRICE v. MABEL G. MARTIN.

April 25, 1966.

Record No. 6152.

Present, All the Justices.

*Richard W. Davis*, for the plaintiff in error.

*John B. Spiers, Jr.* (*Spiers and Spiers*, on brief), for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

This is a declaratory judgment suit filed by Mabel G. Martin against the defendant, Charles R. Price, requesting the court to determine the right of the parties under a certain contract negotiated by a

broker for the sale of real estate. The cause was heard *ore tenus* by the chancellor, who held that the contract was null and void and enjoined Price from asserting any rights thereunder.

The evidence is free of material conflict. It shows that Mrs. Martin was the owner of a parcel of land fronting on Norwood street in the city of Radford, Virginia, and in July, 1964, Max C. Rupe, a real estate broker, at the request of a prospective purchaser, asked Mrs. Martin if she was interested in selling the property. Mrs. Martin told Rupe that she would not list the property with him as agent, but that she would consider selling it for $75 per front foot and she thought she had 250 feet fronting on Norwood street. Nothing materialized as a result of the conversation at that time.

In November, 1964, defendant Price advised Rupe that he was interested in purchasing the Martin property and Rupe told him he thought he could get it for him. They inspected the property and discussed its probable dimensions and price. Several weeks later Price authorized Rupe to buy the property for him. On December 17 Rupe made an offer to purchase the property on behalf of Price for $18,750, with a down payment of $4,750. Mrs. Martin rejected the offer because she said the frontage on Norwood street was 260 feet, rather than 250, and told Rupe that she would sell for $19,500, with a $5,000 down payment. She also stipulated the terms as to yearly payments and interest; agreed to pay Rupe $975 as commission; and stated that she did not want the sale consummated until 1965.

It is undisputed that during the discussion of the terms of the sale of the property Mrs. Martin told Rupe that her son-in-law had been negotiating with another prospective purchaser who had "first refusal" to purchase it and she would like to have "a couple of days" to contact that person before selling the property to Price, and this was agreeable to Rupe.

Rupe filled out the blanks in a printed real estate sales contract, embodying the terms of the purchase stipulated by Mrs. Martin, and she signed it, but Rupe did not write into it the understanding between him and Mrs. Martin that she was to be given an opportunity to determine the interest of the other party before selling to Price. In the sales contract there was printed language to the effect that the down payment made by the purchaser to Rupe upon signing the contract was made to him as agent for the seller. This provision was in conflict with the inserted language that the $5,000 down payment was to be paid upon delivery of the deed.

Immediately after Mrs. Martin signed the sales contract Rupe contacted Price and told him, "Charlie, I have your lot for you provided the price suits you. She has ten feet more and the price is $19,500." Rupe did not tell him that the sale was conditioned upon whether another interested party bought the property. After Price signed the contract on December 17 he asked Rupe if he wanted the $5,000 down payment, but Rupe told him it was not due until delivery of the deed on January 10, 1965.

During the next few days Mrs. Martin called Rupe, or left word for him, on three occasions and told him that her son-in-law had not been able to get in touch with the other prospective purchaser and that she would let him know as soon as she got the answer.

On December 21, Rupe saw Mrs. Martin on a downtown street in Radford and gave her a copy of the contract signed by Price. She told him that her son-in-law had not been able to contact the other prospect and would let him know as soon as he did, and Rupe did not indicate to her that he considered that the term of the condition had expired.

The next day, December 22, Mrs. Martin's son-in-law sold the property to his prospective purchaser for $19,500, and Mrs. Martin agreed to pay to the purchaser's agent a $500 finder's fee. On the same day Mrs. Martin notified Rupe that the property had been sold to the other party. The next day Rupe informed Price for the first time that there was some trouble about the purchase.

On December 26, 1964, Price, acting on the advice of the attorney representing both him and Rupe, gave Rupe his check for $5,000 as the down payment on the purchase price of the property.

Counsel representing all the parties agreed that in order to determine the rights of the parties in the contract Mrs. Martin would file this declaratory judgment suit.

The crucial question presented is whether Rupe was the agent of Price, or of Mrs. Martin, or the agent of both.

The trial court held that under the evidence Rupe was the agent of Price, and that Price was bound by the knowledge of his agent that the sale was subject to a condition precedent.

The findings of fact of the chancellor hearing evidence *ore tenus* carry the weight of a jury verdict, and cannot be disturbed by us unless plainly wrong or without evidence to support them. *Barnes* v. *Craig*, 202 Va. 229, 234, 117 S. E. 2d 63, 67; *Flippo* v. *Broome*, 202 Va. 919, 921, 121 S. E. 2d 490, 491, 492; § 8-491, Code of 1950, 1957 Repl. Vol.

Price argues that Rupe was the agent of Mrs. Martin because she agreed to pay him a five per cent commission on the sale and from the language of the contract designating him as her agent to collect the down payment on the purchase price.

*Business Properties, Inc.* v. *Thomas,* 187 Va. 284, 46 S. E. 2d 337, is relied on to sustain his position. There one of the prospective joint purchasers contacted a real estate agent and indicated to him an interest in purchasing certain property. The agent then obtained from the owner an exclusive listing agreement to sell the property at a minimum price of $31,000, with his commission to be paid out of the sale price. The broker attempted to obtain $35,000 for the property from the purchasers but finally contracted to sell it to them for $33,-000. Business Properties, Inc., became interested in the property and offered the purchasers $45,000 for it but they refused to sell. Then the owner sold the property to Business Properties, Inc.

In a suit brought by Thomas, as trustee for the purchasers, to enforce specifically the contract of sale, Business Properties, Inc., who agreed to stand in the owner's shoes, defended on the ground that the real estate agent was the agent of both the vendor and vendee and that it would be "oppressive, inequitable and unconscionable" for a court of equity to enforce the contract. We affirmed the trial court's holding that the real estate agent, who had an exclusive agency contract with the seller, was the agent of the seller and it would not be inequitable for a court of equity to require specific performance of the contract of sale.

The case is not controlling here. It is clearly distinguishable on the facts from the present case. Mrs. Martin did not list the property for sale with Rupe, and he was not her agent when he contacted her to buy the property for Price.

It is well settled that a real estate broker occupies a fiduciary relationship to his principal and so long as that relationship continues he is under a legal obligation, as well as a high moral duty, to give loyal service to his principal. *Olson* v. *Brickles,* 203 Va. 447, 450, 451, 124 S. E. 2d 895, 898, and authorities there cited. A broker cannot be the agent of both the seller and buyer in the same transaction without the intelligent consent of both principals. Such transactions are voidable and may be repudiated by the principal without proof of injury on his part. *Ferguson* v. *Gooch,* 94 Va. 1, 8, 26 S. E. 397, 399, 400, 40 L. R. A. 234; 12 Am. Jur. 2d, Brokers, § 67, p. 821, § 87, p. 840. See also *Bell* v. *Routh Robbins Real Estate Corp.,* 206 Va. 853, 147 S. E. 2d 277.

Ordinarily a broker or real estate agent is primarily the agent of the party who first employs him. *Carpenter* v. *Virginia-Carolina Chemical Co.*, 98 Va. 177, 180, 35 S. E. 358, 359; *Waller* v. *Welch*, 154 Va. 652, 153 S. E. 722; 3 Mich. Jur., Brokers, § 15, p. 525; 12 Am. Jur. 2d, Brokers, § 67, p. 821.

In the *Waller* case, *supra*, plaintiff contacted a real estate firm to obtain for him an option on a specific piece of property. The agent obtained from the owner an exclusive listing for the property at a specific price and sold it to another party. The listing contract provided that the owner of the land would pay a commission of five per cent to the real estate firm. Plaintiff sued the real estate firm for violation of its agreement, and in ruling on a demurrer which alleged lack of consideration this Court held, in reversing the judgment sustaining the demurrer, that since the real estate firm was employed to obtain an option for the plaintiff which was incident to its business it was his agent, and the fact that in the listing agreement the owner agreed to pay the real estate firm a commission on the sale does not affect the soundness of this reasoning.

In the present case Mrs. Martin refused to list the property with Rupe, and when he contacted her on December 17 he did so as agent for Price who had engaged him to buy the property for him. Mrs. Martin's agreement to pay Rupe's commission and to make him her agent to collect the down payment did not terminate his legal duty and obligation to Price to buy the property as his agent. Rupe clearly remained the agent of Price, and Price was thus bound by the knowledge and agreement of Rupe that the sale was contingent upon another party not exercising his right to purchase.

When Mrs. Martin signed the sales contract agreeing to pay Rupe a commission on the sale and to constitute him as her agent for the purpose of receiving the down payment, Rupe was still acting as agent for Price and he knew that the sale was contingent upon a condition precedent. Rupe violated his legal obligation and high moral duty to both Price and Mrs. Martin when he did not tell Price that the sale was conditioned upon another party's not buying the property. He was acting in a dual capacity as agent for both the buyer and seller, and the contract was voidable because a real estate broker cannot act as agent for both principals without their intelligent consent before a sale is completed.

For the reasons stated, the judgment is

*Affirmed.*