EDWIN H. ALLEN, ET AL.

V.

JAMES LINDSTROM, ET AL.

Record No. 860675

EDWIN H. ALLEN, ET AL.

V.

JAMES LINDSTROM, ET AL.

Record No. 861158

TIMOTHY R. MCGOWAN, ET AL.

V.

COLDWELL BANKER RESIDENTIAL REAL ESTATE
SERVICES, INC., ET AL.

Record No. 861034

April 21, 1989

Present: All the Justices

*Gary J. Spahn (Philip C. Baxa; Mays & Valentine*, on briefs), for appellants. (Record Nos. 860675 and 861158)

*Henry F. Brandenstein, Jr. (Raymond A. Ceresa; Rees, Broome & Diaz, P.C.*, on briefs), for appellees. (Record Nos. 860675 and 861158)

*Alan B. Morrison (Henry F. Brandenstein, Jr.; Rees, Broome & Diaz, P.C.*, on briefs), for appellants. (Record No. 861034)

*Gant Redmon (John R. Braswell*, on brief), for appellees. (Record No. 861034)

COMPTON, J., delivered the opinion of the Court.

In this opinion, we decide appeals of three cases arising from a controversy over the purchase of one parcel of land. The main issues are whether the trial court properly denied a purchasers' request for specific performance and whether a real estate agent owes a duty to a prospective purchaser to communicate a purchase offer to a seller for whom the agent was acting as the exclusive real estate broker.

The basic facts as they relate to the material proceedings in the cases are undisputed. In December 1984, James Lindstrom and Karla Lindstrom, his wife, owned a parcel of undeveloped, residential real estate in Fairfax County described as Lot 33, Acredale Subdivision. They decided to sell the property and listed it with Coldwell Banker Residential Real Estate Services, Inc., through its Vienna branch office.

Subsequently, Edwin H. Allen and Wendy L. Allen, his wife, and Timothy R. McGowan and Adele M. McGowan, his wife, became interested in purchasing the property. A flurry of negotiations ensued between the sellers and the Allens, and between the sellers and the McGowans.

On March 19, 1985, the Allens and the sellers executed a sales contract. The total purchase price was $68,000 with closing to occur on August 1, 1985. On May 13, 1985, the McGowans and the sellers executed a sales contract for the property, which was conveyed by the sellers to the McGowans on July 31, 1985 for $72,000.

On August 16, 1985, the Allens filed a bill of complaint (the first case) against the sellers and the McGowans seeking to set aside the conveyance and for specific performance of the Allen contract. Contemporaneously, the Allens recorded in the clerk's office of the court below a lis pendens against the property. In September 1985, the McGowans began clearing the lot and prepared to build a home on the site.

On September 20, the Allens filed another bill of complaint (the second case) against only the McGowans for a temporary injunction to prevent "any further clearing work, or any construction work" on the property until the issues were decided in the first case. On October 11, the trial court entered the injunction requested and required the Allens to post a bond "to hold harmless" the McGowans from any damages resulting from the injunction. In February 1986, the trial court conducted an ore tenus hearing on issues raised in the first and second cases.

In March 1986, the McGowans filed a motion for judgment (the third case) against Coldwell Banker and Max R. Rush, a licensed real estate agent working for Coldwell Banker in the Vienna office. The McGowans sought recovery in damages for alleged wrongful conduct in failing to transmit to the sellers one of the offers made by the McGowans to purchase the property.

In April 1986, the trial court announced its ruling that the Allens were not entitled to specific performance and entered an order to that effect. On May 27, 1986, the chancellor entered an order, based on the agreement of counsel, vacating the temporary injunction and releasing the lis pendens. Three days later, the trial court conducted a hearing on the McGowans' claim for damages against the Allens resulting from the granting of the temporary injunction.

In August 1986, the trial court entered an order in the third case sustaining the demurrer and dismissing the McGowans' motion for judgment. In September 1986, the chancellor entered an order awarding the McGowans approximately $45,000 against the Allens for damages sustained as a result of granting the temporary injunction.

We awarded the Allens an appeal (Record No. 860675) from the order denying specific performance and an appeal (Record No. 861158) from the order assessing damages against them. We awarded the McGowans an appeal (Record No. 861034) from the order sustaining the demurrer.

In the first case, the facts on the specific performance question were presented to the trial court by a 39-paragraph stipulation, ore tenus testimony, exhibits, and depositions. There was very little conflict in the evidence.

In December 1984, the sellers granted Coldwell Banker the exclusive right to sell the property, which was to be offered at a selling price of $72,000. In the listing agreement, Betty Stough was shown as the "lister" and signed the agreement as "Sales Associate."

In February 1985, Mr. Allen was shown the property by Rush, "a real estate agent with Coldwell Banker," according to the stipulation. Allen had called Coldwell Banker's Vienna office in response to a newspaper advertisement for the property and had spoken with Rush, who was the agent on telephone duty at the time. During that month, the Allens submitted an offer through Rush to the sellers in the amount of $62,000. The sellers coun-

tered with an offer of $70,000, which the Allens rejected and made no further offer. The Allens then asked Rush to inform them if there was "any more activity" in connection with the sale of the property; Rush agreed to comply with the request. Later, Rush contacted Mr. Allen and advised him that another offer to purchase the property had been submitted, less than the Allens' first offer, and that it probably would not be accepted.

On March 10, 1985, the McGowans made an offer to purchase the property. This offer was made on behalf of the McGowans through Mary Ginty, a real estate agent employed by Jackson-Temple, Inc., realtors. Ginty dealt with Stough, the listing agent at Coldwell Banker. The sellers rejected that offer and made no counteroffer.

During the evening of March 18, 1985, the McGowans, through Ginty, made a second offer. This offer was countered by the sellers and presented to the McGowans during the early morning of March 19. That counteroffer was rejected by the McGowans who thereafter made a counteroffer. The McGowans' counteroffer was rejected by the sellers who made a second counteroffer about 10:30 a.m. on March 19. The sellers' second counteroffer was transmitted to Ginty as agent for the McGowans. The McGowans directed Ginty to make a second counteroffer to the second counteroffer made by the sellers. Stough, believing that the matter was "all settled," left the area before noon on March 19 and Rush agreed to act on her behalf.

About 6:00 p.m. on March 19, Ginty called Rush and indicated "that the contract was acceptable to both parties." There was a sharp conflict in the evidence about the details of this conversation. Ginty testified that she explained to Rush that she possessed what she anticipated was an offer satisfactory to the sellers and asked if he would "assist" her in "going back to" the sellers. She asked Rush to meet her that evening to "go over the contract." Rush replied, according to Ginty, that "he didn't feel any urgency to do it that night" because "the property had been on the market for quite some time." Rush, on the other hand, testified that Ginty did not insist on discussing the matter that evening. He said that Ginty told him, "I don't want to hassle it any more tonight."

About 7:00 p.m. that evening, Rush called Mr. Allen and advised him there was further activity about the sale of the parcel and that, if he wanted to purchase the property, he should make another offer that night. About 9:00 p.m. that evening, Mr. Allen

went to the Coldwell Banker office in Vienna where he met Rush. An offer to purchase was prepared for $67,000, the same amount as the sellers' last counteroffer to the McGowans. Later that evening, Rush and Anice Sutherland, another employee of Coldwell Banker, presented that offer to the sellers; the sellers rejected it and countered with an offer of $68,000, which was accepted by the Allens. The contract in issue was executed that evening. The following day, the sellers sent a telegram to the McGowans withdrawing the outstanding $67,000 counteroffer.

Subsequently, the sellers learned that, on the night the Allen contract was executed, the McGowans wanted to present a counteroffer of $67,000 with conditions more favorable than contained in the Allen contract. The sellers concluded that critical information had been withheld from them on the night of March 19 and decided to dishonor the Allens' contract. The sellers notified the Allens and the McGowans that the lot would be sold to whomever would pay the original listing price of $72,000.

The Allens refused to become further involved in negotiations. The McGowans, with knowledge of the Allen contract, paid the sellers the listing price and were deeded the property one day before the scheduled closing on the Allen contract.

The trial court ruled, in refusing to grant specific performance of the Allen contract, that Rush was acting as the agent of the Allens on the night of March 19. The court said that Rush was representing "two principals on the opposite side of the same transaction," that Rush's "knowledge and actions were imputed to" the Allens, and that "they were bound by his actions."

The chancellor further opined that Rush and Sutherland "failed to disclose all the facts" to the sellers material to the McGowans' negotiations. In addition, the trial court found that the Coldwell Banker agents "were acting out of a personal motive or interest" that was adverse to the sellers' interest. This was an allusion to the fact that Rush would not have been entitled to a commission unless he was the selling agent. Finally, the trial court said that the events of the night of March 19 in obtaining approval of the Allens' contract "were not only unfair but unreasonable, making the transaction unjust and inequitable."

The trial court's action in denying the Allens' request for specific performance was erroneous. This incorrect ruling stemmed from the erroneous determination that Rush was acting as the Allens' agent on March 19.

■ We have defined agency "as the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act." *Raney* v. *Barnes Lumber Corp.*, 195 Va. 956, 966, 81 S.E.2d 578, 584 (1954); *accord Nuckols* v. *Nuckols*, 228 Va. 25, 35, 320 S.E.2d 734, 740 (1984). The power of control is the determining factor in ascertaining the alleged agent's status. *Texas Company* v. *Zeigler*, 177 Va. 557, 564, 14 S.E.2d 704, 706 (1941).

■ One who alleges agency must prove it. *Raney*, 195 Va. at 966, 81 S.E.2d at 584. There is no presumption that an agency exists; a person legally is presumed to be acting for himself and not as the agent for another. *Id.* And, generally a real estate broker or agent is primarily the agent of the party who first employs him. *Price* v. *Martin*, 207 Va. 86, 90, 147 S.E.2d 716, 718 (1966).

■ In the present case, the evidence is undisputed that Coldwell Banker, and its employee Rush, were the agents of the sellers for the sale of the subject property. The record is devoid of credible evidence, however, to establish that Rush also was the Allens' agent. *See Business Properties, Inc.* v. *Thomas*, 187 Va. 284, 46 S.E.2d 337 (1948). There was no agreement, written or oral. Significantly, the Allens did not possess the power to control Rush's actions with relation to the property. While not determinative, Mr. Allen testified that he did not consider Rush his agent, and Rush testified that he was acting solely for the sellers and not the Allens.

Moreover, Rush's actions were consistent with the agency relationship between Coldwell Banker and the sellers. Rush merely dealt with a prospective purchaser, agreed to keep the prospect advised of sales activity, and notified the prospect when negotiations were renewed. This was conduct wholly compatible with Coldwell Banker's obligation to the sellers to produce the best possible deal. As the Allens point out, the question whether Rush performed his duty as agent for the sellers is a separate issue from the question whether Rush was acting as agent for the Allens.

Consequently, because Rush was not the Allens' agent, we will reverse the decree of April 25, 1986 denying the Allens' request for relief. The sellers and the McGowans argue, however, that even if we rule Rush was not the Allens' agent, the Allens nevertheless are not entitled to specific performance. The sellers and the McGowans say that the trial court found that the circumstances

surrounding the sellers' decision to sell to the Allens "were poisoned by the fraud and misrepresentation precipitated by the greed of Rush and that enforcing a deal so made would not be equitable." We do not agree.

■ The failure of the sellers' agent to reveal information to them is insufficient to justify denial of specific performance to the Allens, there being no evidence that the Allens participated in Rush's alleged improper conduct. Moreover, the McGowans will not be heard to complain about the inequities of the situation when they purchased the property with full knowledge of the Allens' contract and thereafter proceeded, in the midst of pending litigation, to improve the property. Although the granting of specific performance is discretionary and not an absolute right, if the contract sought to be enforced is proved and is in its nature and circumstances unobjectionable, a court of equity should decree specific performance as a matter of course. *Haythe* v. *May*, 223 Va. 359, 361, 288 S.E.2d 487, 488 (1982).

■ Thus, we will remand the first case to the trial court with direction that the Allens be awarded specific performance of the contract of March 19, 1985 in accordance with the prayer of the Allens' bill of complaint. In view of this ruling, it follows that the trial court erred in the second case. Because the Allens were entitled to specific performance, the trial court properly enjoined the work on the property during pendency of the litigation. Therefore, the trial court erred in awarding any damages to the McGowans against the Allens arising from the temporary injunction. Accordingly, the judgment of September 8, 1986 for the McGowans will be set aside and final judgment will be entered here in favor of the Allens.

This brings us to the third case. In this action for damages brought by the McGowans against Coldwell Banker and Rush, we must state the facts, not the legal conclusions, as set forth in the motion for judgment, the demurrer having admitted the truth of all material facts properly pleaded.

During March 1985, the plaintiffs became interested in purchasing the subject property. The sellers previously had entered into a listing agreement with Coldwell Banker, the broker, concerning sale of the property. Rush, an agent of the broker, was not the listing agent and, therefore, would not have received any commission on the sale of the property unless he was the selling agent; that is, unless he produced a ready, willing, and able buyer.

The plaintiffs relied upon Jackson-Temple, Inc., and its employee, Ginty, to assist them in connection with the purchase of the property.

On March 18, after extensive negotiations, the plaintiffs submitted an offer to purchase the property to Jackson-Temple and Ginty. On that day, Ginty transmitted the plaintiffs' offer to defendants who held themselves out as the sellers' agents and the proper parties to whom all offers to purchase should be transmitted. The plaintiffs relied upon defendants to convey their offer to the sellers.

Nevertheless, defendants maliciously and intentionally failed to transmit the purchase offer to the sellers so that the entire sales commission would be received by Coldwell Banker and so that Rush would be the selling agent in connection with the sale. Alleging the defendants acted willfully, wantonly, and with intent to defraud, the plaintiffs sought an award of compensatory and punitive damages.

The plaintiffs contended that "pursuant to the rules and regulations of the Virginia Real Estate Commission [now Virginia Real Estate Board], the Defendants had a duty to convey the Plaintiffs' offer to purchase the real property to the Sellers." The regulation relied upon by the plaintiffs provides for sanctions against real estate professionals who fail "to promptly tender to the seller every written offer to purchase." § 3.5.15, Regulations of the Virginia Real Estate Commission (1984), now § 3.5.16, Virginia Real Estate Board Licensing Regulations (1987).

In sustaining the demurrer, the trial court ruled that the plaintiffs had failed to state a cause of action because, while Rush may have breached a duty to the sellers, he did not owe a duty to the prospective purchasers to communicate an offer to the sellers. The court also noted that neither actual fraud nor misrepresentation had been pled. The court further decided that ethical rules and regulations "may not provide the basis of a private cause of action under the circumstances of this case." We agree with the trial court's ruling.

Plaintiffs invite us to extend an administrative rule governing conduct of real estate agents and brokers, and to create a private cause of action in favor of a prospective purchaser against an agent of the seller for whom the agent was acting as the exclusive broker. We decline the invitation. *See Klotz* v. *Fauber*, 213 Va. 1, 189 S.E.2d 45 (1972).

In reaching our decision we draw on the analysis in *Ayyildiz* v. *Kidd*, 220 Va. 1080, 266 S.E.2d 108 (1980), also relied upon by the trial court. There, a licensed physician was sued unsuccessfully for malpractice by one of his patients. The physician then filed a motion for judgment against the patient's attorney, alleging the malpractice action was prosecuted without probable cause and with malice. The plaintiff also alleged the attorney's conduct fell below the legal standards of the community and that his willful and negligent acts caused the plaintiff damages.

We affirmed the trial court's action in sustaining defendant's demurrer. Addressing the allegation of injury caused by the negligence of the attorney, we pointed out that the attorney-client relationship was between the patient and the defendant attorney, and not between the plaintiff and the defendant. We said that an attorney's liability generally is to his client if the attorney has been guilty of some dereliction of duty to the client. We noted that the attorney's primary and paramount duty is to the client. While lawyers owe a general duty to the judicial system, it is not the type of duty that translates into liability to an adversary for negligence when there is no foreseeable reliance by the adversary on the attorney's actions. *Id.* at 1085, 266 S.E.2d at 112.

In addition, we stated that the rules of conduct promulgated in the Code of Professional Responsibility furnished no basis for a private cause of action. We observed, however, that disciplinary proceedings could be filed before the appropriate body against the offending lawyer. *Id.* at 1085-86, 266 S.E.2d at 112.

We apply precisely the same reasoning to the present case. The defendants' primary and paramount duty, as broker and broker's agent, was to the sellers, with whom they had an exclusive contract. While there may be some type of general duty to the public owed by every realtor, it is not the type of duty that converts into a liability against a seller's agent for improper conduct to one in the adversary position of prospective purchaser, where there is no foreseeable reliance by the prospect on the agent's actions. Even though the plaintiffs alleged in a conclusory averment that they relied on defendants to transmit the offer, there is no factual allegation of any direct contact or communication between the McGowans and the defendants. Indeed, there is no factual allegation that the plaintiffs even knew the identity of the sellers' agent or knew that an agent of the sellers was involved. Rather, the plaintiffs alleged they relied upon Jackson-Temple and Ginty.

▮ Consistent with the *Ayyildiz* rationale, the public is protected adequately from the type of misconduct asserted by the plaintiffs by administrative regulation and policing of the real estate profession. *See Virginia Real Estate Commission* v. *Bias*, 226 Va. 264, 269-70, 308 S.E.2d 123, 125-26 (1983) (real estate broker, guilty of self-dealing, had responsibility as agent of seller to communicate all offers regardless of value). The creation of a new legal duty giving rise to a private cause of action for damages should not be accomplished by judicial fiat.

▮ Finally, we reject the plaintiffs' argument that the third party beneficiary doctrine permits them, as non-parties to the contract between the sellers and defendants, to maintain this action. Construing the third party beneficiary statute, Code § 55-22, we have said that the doctrine "is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Professional Realty Corp.* v. *Bender*, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976). There is no allegation in the motion for judgment to support a conclusion that the listing agreement in this case "clearly and definitely" intended to confer a benefit upon prospective purchasers.

For these reasons, the disposition of the three appeals will be as indicated below.

Record No. 860675 - *Reversed and remanded.*
Record No. 861158 - *Reversed and final judgment.*
Record No. 861034 - *Affirmed.*